WEALTHY M. KIMBERLY *vs.* JAMES L. FOX AND OTHERS.
JAMES L. FOX *vs.* WEALTHY M. KIMBERLY AND ANOTHER.

K having a contract from I for the conveyance to her of certain land, agreed to sell the land to R, and to give him a deed on his paying $125 in cash, he to give his note and a mortgage back for the balance. R having paid the $125, K procured a deed from I directly to R, which she offered to give R on his executing the note and mortgage. While the matter was pending, R seized the deed and immediately had it recorded and refused to give the note and mortgage. K, fearing that he would convey the land away, after trying in vain to prevail upon him to give the mortgage, drew up a writing which she got him to sign, by which he agreed upon a penalty to sell the land to her, for what it cost him, if he sold to any body. Immediately after R conveyed the land to F for a valuable consideration, he having full knowledge of the facts. K then brought a bill in equity against F and R, to compel F to convey the land to her and to remove the cloud from the title. In this suit the facts had been found and the case was pending for the advice of the supreme court, when F and K made a parol agreement that the suit should be withdrawn, and that K should convey the land to F on his paying her $250, and procuring for her the note of R for $1150. F at once paid the $250, which K re-

ceived, and afterwards procured the note of R and tendered it to K, but she refused to accept it and to withdraw the suit. F then brought a bill in equity against K, to compel her to convey and to enjoin her against the further prosecution of her suit. Held, on the two suits, which were considered together :— 1. That the agreement drawn by K, and signed by R, by which he promised conditionally to sell the land to her, was not, in the circumstances, an assent on her part to his possession of the deed, and did not estop her from asserting that the deed was not delivered. 2. That although the deed was inoperative from want of delivery, yet that the record of it constituted a cloud upon the title which K was entitled to have removed. 3. That the agreement between K and F, by which she promised to withdraw her suit and convey to him the land, being inoperative by the statute of frauds, was not taken out of the statute by the payment of the $250 by F,—the mere payment of money not constituting a part performance for such a purpose. 4. That the matter alleged in the bill of F, if constituting any equity in his favor, should have been set up by a cross-bill and not made the subject of a separate bill. 5. That in granting to K the relief sought, it was equitable that she should be required to pay back the $125 received by her from R.

BILLS IN EQUITY. The suit of Wealthy M. Kimberly against James L. Fox and others, was brought to compel the respondent Fox to release a record title which the petitioner claimed that he had fraudulently acquired to certain real estate owned by her, and to remove the cloud upon her title created by his claim. The suit of Fox against her was brought after the facts in the first case had been found by the court, and alleged a settlement between the parties and an agreement to discontinue the case, and prayed for an injunction against the further prosecution of the suit.

About the first day of April, 1855, one Mineas Ives, who was then the owner of the premises, leased them to the petitioner in the first suit, with an agreement that she might purchase them for the sum of $1,200. The petitioner thereupon entered into possession and had ever since remained in possession. Immediately after, she let the premises to Theron Richmond, one of the respondents, who went into possession under her, and on the 16th of May, 1855, she and Richmond entered into an agreement by which she was to sell the premises to him for $1,250, and to give him a good warrantee deed whenever he paid $125, he to make a note for the balance to be secured by a mortgage of the land. Richmond made payments from time to time toward the

$125, and on the 19th of September, 1855, had paid the whole of that sum. On the 27th of September, 1855, the petitioner applied to Ives for a deed of the premises, under his agreement to convey to her, and he, at her suggestion, to save expense, executed a deed directly to Richmond, and delivered it to her, for her to deliver to Richmond on his giving her the note and mortgage as agreed, with the understanding that if he did not do so, she might return the deed to Ives, who would then make another deed in place of it directly to her. Immediately after she informed Richmond that she had procured the deed from Ives, and that it was made directly to him, and requested him to execute the note and mortgage, and refused to deliver him the deed until he had done so. She however, at his request, placed it in the hands of a third person to be read to him, and, while it was being read, he seized it by force and carried it away, and immediately had it recorded in the office of the town clerk. Shortly after, he tendered her a note and mortgage and had them read in her presence, but she declined to accept them until she could more fully understand their nature and effect. Learning soon after that they were correct, she informed him that she would accept them, but he then refused to deliver them to her. After repeatedly demanding them of him, fearing that he would convey the premises to some other person, she persuaded him to sign the following agreement, which was drawn by her.

" Goshen, October 9th, 1855. I, Theron Richmond, do agree and bind myself in the sum of $300, that if I sell my place in Goshen, formerly owned by Mineas Ives, that I will sell it to Selah Richmond or Wealthy M. Kimberly for what it has cost me, and pay each of them one hundred and fifty dollars each if I forfeit this agreement.

Theron Richmond."

On the 10th of October, 1855, Richmond conveyed the premises for a valuable consideration to the respondent, James L. Fox, who had full knowledge of all the foregoing facts. Fox the next day had his deed recorded.

Richmond was insolvent at the time of the agreement to

purchase the premises, and so remained down to the 10th of October, 1855, when he left the state and had not since returned. The petitioner had paid to Ives the full amount which by her agreement she was to pay for the land, and he made no claim to any interest in the premises.

The foregoing facts were found by a committee to whom the suit of Kimberly against Fox and others was referred, and the report of the committee was accepted at a term of the superior court holden in September, 1856, and the case reserved, on the facts thus found, for the advice of the supreme court of errors at its next session in Litchfield County. On the 5th of March, 1857, and before the session of the latter court, the petitioner and Fox entered into an agreement with regard to the suit, which was reduced to writing and signed by the latter, but which she did not sign, though she agreed orally to its terms. This agreement was as follows:—

" Know all men by these presents that we, Wealthy M. Kimberly and James L. Fox, have made and do hereby make the following contract, viz.: Whereas, there is now pending in the superior court for the county of Litchfield a petition in chancery in favor of said Kimberly and against said Fox and others, concerning the house and lot situated in Goshen, formerly the property of Mineas Ives; and whereas said Kimberly claims that Theron Richmond fraudulently obtained a deed from her of said property, and thereupon deeded the same to said Fox, so that in law said Fox obtained no title thereto:—now therefore, to settle said case and confirm the title of said Fox to said property, we do hereby agree, the said Fox to pay the said Kimberly $250, and the said Kimberly upon such payment to give to said Fox a good and perfect title to said house and lot; and said suit in chancery is to be and shall be withdrawn, each of us to pay our own costs. Given under our hands and seals this 5th day of March, 1857.                    ⸳ [SEAL.]
                    · JAMES L. FOX.       [SEAL.]"

On the same day Fox paid her the sum of $250, and offered her the note of Theron Richmond for $1,150, which

by the agreement she was to have, (although as drawn the agreement omitted so to state,) but she declined to accept the note, and afterwards refused to execute a quitclaim deed to Fox on his tendering one for her signature, and declined to withdraw her suit. Fox then brought a bill in equity, setting up the last mentioned facts, and praying that she be compelled to convey, and be enjoined against the further prosecution of her suit.

On the foregoing facts both cases were reserved for the advice of this court.

*Hollister* and *Hickox,* with whom was *Peet,* for Mrs. Kimberly.

In the case of *Kimberly* v. *Fox.*

1. The deed to Richmond from Ives was an escrow in the hands of Mrs. Kimberly, and was never delivered. It consequently had no effect to pass the title. *Jackson* v. *Phipps,* 12 Johns., 421. *Raymond* v. *Smith,* 5 Conn., 559. *Hale* v. *Hills,* 8 id., 39.

2. If the deed conveyed no title to Richmond, he clearly could convey none to Fox. If Fox in any circumstances could have acquired a title from Richmond that would be good against us, yet he clearly could not here, as he took his deed with a full knowledge of all the facts.

3. Although no title passed by the deed, yet, as it was formally executed and put on record, it constitutes a cloud on the title of the petitioner, and she is entitled to the relief which she seeks.

4. The agreement of October 9, 1855, can not affect the equity of the petitioner. It is not signed by her, but only by Richmond. She drew it and requested him to sign it, but it is found that she did so in the fear that he would convey the land to a stranger and thus complicate the embarrassments of her title. She regarded it as some security of her rights, and did not intend to concede her rights away.

In the case of *Fox* v. *Kimberly.*

1. The prayer for injunction should not be granted. The only mode by which, as against the former petition, advant-

age could be taken of the facts set up in this petition, would have been by cross bill, or plea *puis darrein continuance.* 2 Swift Dig., 214, 774.   Story Eq. Plead., 313.   *Cartwright* v. *Clark,* 4 Met., 104.

. 2. The payment of the $250 is not such a part performance as will take the case out of the statute of frauds. 2 Story Eq. Juris., § 760.   Sugden on Vendors, ch. 3, sec. 7. *Clinon* v. *Cook,* 1 Sch. & Lefr., 41.   *Thompson* v. *Gould,* 20 Pick., 138.   *Stearns* v. *Hubbard,* 8 Maine, 320.   *Wilton* v. *Harwood,* 23 id., 131.   *Parkhurst* v. *Van Cortlandt,* 1 Johns. Cha., 280, 285.

3. The court will not, in a case like the present, decree specific performance, even if the case were out of the statute of frauds, the consideration being entirely inadequate.   " A consideration must not only exist, but be adequate, to induce a court of equity to decree a compulsory performance.   *Dodd* v. *Seymour,* 21 Conn., 479.   2 Sw. Dig., 24.   *Seymour* v. *Delancy,* 6 Johns. Ch., 222.

4. Even if the agreement to discontinue the former petition had been binding on the respondent if made separately, it is now so interwoven with the other parts of the contract that the whole must stand or fall together.   *Irvine* v. *Stone,* 6 Cush., 508.

*Graves,* for Fox.

1. In the case of *Kimberly* v. *Fox.*

If it be conceded that Richmond obtained possession of . the deed unlawfully, so that there was no delivery of the deed in the first instance, yet the agreement of October 9, 1855, admitted that a title was acquired by Richmond, and is equivalent to a delivery of the deed.   This agreement was drawn up by Mrs. Kimberly herself and signed by Richmond at her request, and by him delivered to her.   In it the land is described as belonging to Richmond, and he stipulates that if he ever sells he will sell it to her or to a certain other party named, for what it has cost him.   This was clearly a waiver of the objection, which she had a right to make, to his mode of getting possession of the deed, and an agreement that he

might retain it.   She ought now to be estopped from assert-
ing the want of delivery, especially against Fox, who has
bought the property and paid a valuable consideration for
it.   It is not necessary that the agreement be regarded as an
admission that she had no rights whatever in relation to the
premises, but it is enough for us that it makes good the want
of delivery in the deed,—that it concedes that a title had
passed to Richmond by the deed.

2. In the case of *Fox* v. *Kimberly.*

The contract of March 5, 1857, entered into for the pur-
pose of settling the whole controversy, and by which Mrs.
Kimberly agreed to give Fox a deed of the premises, is
binding on her, and should be enforced by the court.   It is
true that on her part it is only a parol contract, but it has
been absolutely and fully performed by Fox, by the payment
of the $250 in cash, and the procurement and tender to her
of Richmond's note for $1,150.   This performance on his part
takes the case out of the statute.   *Eaton* v. *Whittaker,* 18
Conn, 222, 231.   But she not merely agreed to convey to us
the land, but to withdraw her suit.   This latter undertaking
is not an agreement with regard to land, and need not be in
writing.   Shall she now be permitted to go on with her suit,
and will the court entertain it and grant a decree, she having
received and still retaining our money?   It is said that we
should have availed ourselves of these facts by a cross bill to
the original suit.   But we have brought in new parties in
our petition.   Besides, by the agreement, that suit was to be
withdrawn and both parties were to pay their own cost.
We were not bound therefore to pursue our defense to that
suit, but had a right to insist on its withdrawal.

HINMAN, J.   The object of one of these cases is an injunc-
tion against the further prosecution of the other.   They have
therefore been argued together, as if they virtually constituted
but one case, and will be disposed of in the same manner;
though it will be convenient to treat them in the order in
which they were brought.

The object of the first case is to relieve certain real estate,

which in equity belongs to the plaintiff, from a cloud upon her title arising from a deed of it from Mineas Ives, its former proprietor, to the respondent Richmond, and a subsequent deed of the same from Richmond to the respondent Fox, who is now claiming title under those deeds. The plaintiff contracted with Richmond to cause the property to be conveyed to him, on his payment of a small portion of the purchase money, and the execution to her of a note for the balance, with a mortgage of the property to secure it. The cash portion of the purchase money was paid, and the plaintiff had procured the deed from Ives directly to Richmond, for the purpose of delivering it to him, on receiving the note and mortgage as agreed upon; but Richmond, probably thinking that he might take advantage of a mistake in the written memorandum of the contract between himself and the plaintiff, never executed the note and mortgage, but fraudulently and with force obtained possession of the deed thus executed to him, and caused it to be recorded as a valid and perfected instrument; and subsequently executed a deed of the premises to Fox, who took his conveyance with full knowledge of the state of the title, and particularly of the manner in which his grantor procured the deed under which he claimed title. As Richmond's deed was never delivered it was of course invalid, and Fox, having knowledge of the fact, is in no better condition than his grantor. But the deed was correct in form, and therefore casts a cloud upon the title, which would remain, although Ives, who still has the legal title, should convey it to the plaintiff who is equitably entitled to it. The plaintiff's case is so obviously just, that counsel have not even claimed that, upon the facts thus far alluded to, she would not be entitled to relief. But it is insisted that on the 9th of October, 1855, she, in a contract of that date, expressly recognized Richmond's title, and therefore can now make no claim in opposition to it. It is true that she then procured from him an agreement to sell the property to her or to Selah Richmond for what it cost him, if he sold it to any body. But he was by that writing under no obligation to sell it to any body, and there does not

appear to have been any consideration even for this condi-
tional agreement.   Besides, the agreement itself amounts to
no more than a promise to do that which he was under the
strongest equitable obligation to do without any such prom-
ise, that is, to convey back the property to the equitable
owner on being repaid the small sum which he had ad-
vanced for it.   The committee finds that she induced Rich-
mond to make this writing, in order to prevent his conveying
away the property to her prejudice to some third party.   The
circumstances, therefore, under which this writing was exe-
cuted, show that it was on her part an attempt to get back
from him that which he had fraudulently obtained from her—
the appearance of a title to this property—rather than any
recognition by her of his ownership of it.   We do not think,
therefore, that the taking of this agreement, although it
appears that she drew it up, ought to prevent her from ob-
taining the equitable relief which she seeks.   But as Rich-
mond did, in fact, advance towards the purchase money for
the property the sum of one hundred and twenty-five dollars,
it is equitable that this should be repaid to him, on the exe-
cution by him of a quitclaim deed to her, and the execution
also of a like conveyance by the defendant Fox.   The parties
will then be placed in the condition they were in before any
contract was made between them.

While the original suit was pending in the superior court,
after the facts had all been found by a committee, and the
case was reserved for the advice of the supreme court of
errors, the petitioner and the respondent Fox made a parol
agreement in respect to the settlement of the cause, by
which, on the performance of certain stipulations on the part
of Fox, the petition of Mrs. Kimberly was to be withdrawn.
And this is now made the subject of a bill for an injunction
against the further prosecution of the original bill, and for a
specific execution of the terms of this last agreement; and
the question is whether this last bill can be maintained.

It is quite obvious that so far as this original bill seeks a
discontinuance of the former suit, or an injunction against
its further prosecution, the matters set up for this purpose

might, if they amount to any thing, have been more properly set up by way of cross bill or by plea *puis darrein continuance.* 2 Swift Dig., 213. Story Eq. Pl., 313.

But we have not entered into this question, because the agreement, being by parol, and being an agreement by which Mrs. Kimberly proposes to dispose of her equitable interest in the premises, which are the subject matter of the original suit, is of course an agreement to dispose of an interest in land, and is therefore within the statute of frauds ; and we know of no authority for saying that such an agreement can be taken out of the statute by the mere payment of money . in part execution of it.

We therefore advise that the superior court dismiss this bill.

In this opinion the other judges concurred.

In *Kimberly* v. *Fox*, petition to be granted.
In *Fox* v. *Kimberly*, bill to be dismissed.