## WILLIAM BREEN v. WILLIAM PHELPS, ADMINISTRATOR (ESTATE OF ANNA PHELPS)

SPEZIALE, C. J., PETERS, PARSKEY, ARMENTANO and SHEA, Js.

Argued October 16, 1981—decision released January 26, 1982

*John L. Gerardo,* with whom, on the brief, were *John M. Massameno* and *William T. Barrante,* for the appellant (plaintiff).

*William C. Franklin,* for the appellees (defendants).

SHEA, J. This appeal raises procedural issues regarding appellate review of a ruling striking a single count of a complaint and also substantive issues relating to the statute of frauds and the nonclaim statute.

The complaint alleged in the first count a claim for specific performance of an agreement for the sale to the plaintiff of certain real estate in Litchfield owned by Anna Phelps, deceased, for whose estate the defendant[1] is acting as administrator. The second count sought damages against the estate upon the ground of unjust enrichment or constructive trust by virtue of payments made by the plaintiff to the decedent upon the agreed price for the real estate, amounts he paid for property taxes, and the value of labor and materials he furnished in repairing and renovating the property.

A motion to strike the first count of the complaint was granted, *N. O'Neill, J.,* upon the ground that the writing memorializing the agreement failed to comply with the statute of frauds; General Statutes § 52-550; and that the acts of part performance alleged were insufficient as a matter of law to overcome this bar to the action. The motion was also

---

[1] The plaintiff named as defendants not only the administrator of the estate but also the heirs of the decedent. Most of the references in the briefs are to "the defendant" and we shall adopt this convention.

addressed to the second count and there relied upon the failure to allege a timely presentation of the claim to the defendant administrator as required by the nonclaim statute, General Statutes § 45-205. This motion was denied because the court concluded that the unjust enrichment claim alleged was "contingent and at the moment still a mere possibility" and, therefore, not subject to the nonclaim statute.[2] The defendant then filed an answer and the plaintiff's reply to the special defenses raised therein closed the pleadings. The defendant moved for summary judgment upon the second count, relying upon the failure of the plaintiff to present his claim in writing within the period allowed by the nonclaim statute. The court, *Pickett, J.,* concluded that the plaintiff's claim in the second count was essentially for damages rather than for the return of specific property, and, therefore, presentation in writing was required by the statute. The facts set forth in an affidavit of the defendant concerning the failure to present the claim within the period established by the Probate Court were not disputed. The court rendered summary judgment for the defendant upon the second count, and the plaintiff has appealed from that judgment and also from the action of the court in striking the first count of the complaint.

The defendant claims that we have no jurisdiction to consider the plaintiff's claim of error in respect to striking the first count of the complaint because the granting of the motion to strike that count is not a final judgment. The change in nomenclature from "demurrer" to "motion to strike" effectuated by the

---

[2] The trial court also concluded that the allegations of a constructive trust in the second count of the complaint were insufficient to state such a cause of action.

1978 revision of the rules of practice has not modified the right of a party to replead his cause or defense after his original pleading has been stricken. Practice Book § 157 (as amended).[3] The ruling upon the motion, therefore, does not qualify as a final judgment because it neither terminated a separate and distinct proceeding nor concluded the rights of the parties so that further proceedings could not affect them. *E. J. Hansen Elevator, Inc.* v. *Stoll,* 167 Conn. 623, 627, 356 A.2d 893 (1975). It has been expressly held that the sustaining of a demurrer is not a final judgment. *Costecski* v. *Skarulis,* 103 Conn. 762, 131 A. 398 (1925).

A plaintiff, however, may elect to stand upon a complaint which has been stricken as deficient by refusing to plead further. *Vincent* v. *McNamara,* 70 Conn. 332, 340, 39 A. 444 (1898); *O'Donnell* v. *Sargent & Co.,* 69 Conn. 476, 483, 38 A. 216 (1897). Practice Book § 157 (as amended) expressly provides for the entry of judgment upon motion "where an entire complaint, counterclaim or cross complaint has been stricken." The rule does not apply in this case, however, where only one count of the complaint was stricken.[4] The apparent purpose of limiting judgments under the rule to the striking of

---

[3] Practice Book § 157 (as amended) provides as follows: "Within fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading; provided that in those instances where an entire complaint, counterclaim or cross complaint has been stricken, and the party whose pleading has been so stricken fails to file a new pleading within that fifteen-day period, the court may upon motion enter judgment against said party on said stricken complaint, counterclaim or cross complaint."

[4] The plaintiff assumed that the granting of the motion to strike the first count of his complaint was a final judgment. Pursuant to Practice Book § 3001, he filed a notice within the twenty days allowed that he was reserving his appeal from that determination until a final disposition of the cause. Later the parties stipulated that the

an entire complaint is to discourage piecemeal litigation[5] by deferring any appeal from a ruling upon a single count of a complaint until all of the plaintiff's claims against the defendant have finally been decided. Its adoption in 1978 changed our former practice which permitted such an appeal. See *Chapin* v. *Chapin,* 155 Conn. 691, 692, 229 A.2d 548 (1967); *Enfield* v. *Hamilton,* 110 Conn. 319, 322, 148 A. 353 (1930). The striking of a particular count may be reviewed in an appeal from the final judgment if the ruling has resulted in some aggrievement. Practice Book § 3000.[6] The situation is analogous to that of a defendant who cannot appeal from the denial of his motion to strike a complaint or from the granting of a motion to strike his special defense, but may have these rulings reviewed upon his appeal from the final decision on the merits of the case. *Nowak* v. *Nowak,* 175 Conn. 112, 117–22, 394 A.2d 716 (1978); *Stocker* v. *Waterbury,* 154 Conn. 446, 449, 226 A.2d 514 (1967); *Montanaro* v. *Pandolfini,* 148 Conn. 153, 157, 168

---

first count of the complaint should be stricken and an order striking that count was entered in accordance with this agreement. The judgment file, however, reflects only the rendition of the summary judgment upon the second count.

[5] The problems of judgments upon separate claims and their appealability is dealt with in § 54 (b) of the Federal Rules of Civil Procedure. The rule presently allows the entry of a final judgment upon fewer than all of the claims pleaded "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." See 6 Moore's Federal Practice (2d Ed.) ¶¶ 54.01 [1] through 54.01 [6.-5].

[6] Practice Book § 3000 provides in part as follows: "If a party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial . . . he may appeal from the final judgment of the court or of such judge . . . ." See General Statutes § 52-263. The words "arising in the trial" have been read broadly to include motions made in the trial court. *State* v. *Clerkin,* 58 Conn. 98, 100–101, 19 A. 517 (1889).

A.2d 550 (1961). We conclude, therefore, that we may review the ruling of the trial court striking the first count of the complaint in this appeal from the final judgment.[7]

## I

The agreement which was the subject of the first count of the complaint was set forth on the reverse side of a bank money order in the sum of $100 dated August 27, 1970, drawn by the plaintiff and payable to the decedent, Anna Phelps. Above her signature endorsing the money order the following words appear: "This sum as a deposit on the Henry Phelps or Mrs. Anna Phelps property at agreed price of $5,000.00 (Five Thousand Dollars) by the parties being Anna Phelps and William R. Breen."[8] The trial court concluded that this writing did not meet the requirements of our statute of frauds;

[7] Although the judgment file in this case purports to dispose of only the second count of the complaint, because the first count had been stricken and the plaintiff had deliberately not repleaded, the judgment effectively terminated the entire case in the trial court. There could not very well be any further proceedings upon the first count which has been stricken and which the plaintiff has elected not to amend except for the formal entry of judgment on that count, a procedure which Practice Book § 157 (as amended) does not sanction.

[8] The appendix to the plaintiff's brief includes the text of endorsements and notations upon several checks given later to Anna Phelps as payments on the purchase price of the property. The complaint referred only to the money order dated August 27, 1970, which was attached as an exhibit and which contained the language quoted. Payment is alleged of a total sum of $3100 to Anna Phelps from August 27, 1970, to February 3, 1976, the date of her death, but no reference is made to any other writings signed by her. The checks referred to in the plaintiff's appendix are not included in the record or in the trial court file. We could not consider them in any event in reviewing a ruling upon a motion to strike which must be decided solely upon the basis of the allegations of the complaint. *Amodio* v. *Cunningham,* 182 Conn. 80, 82–83, 438 A.2d 6 (1980).

General Statutes § 52-550;[9] which provides that "[n]o civil action shall be maintained . . . upon any agreement for the sale of real estate . . . unless such agreement, or some memorandum thereof, is made in writing and signed by the party to be charged therewith . . . ." To comply with the statute of frauds "an agreement must state the contract with such certainty that its essentials can be known from the memorandum itself, without the aid of parol proof, or from a reference contained therein to some other writing or thing certain; and these essentials must at least consist of the subject of the sale, the terms of it and the parties to it, so as to furnish evidence of a complete agreement." *Montanaro* v. *Pandolfini,* 148 Conn. 153, 157, 168 A.2d 550 (1961). The trial court in granting the motion to strike found that the writing on the check was insufficient to satisfy the statute in two respects: (1) the failure to specify any time for performance; and (2) the ambiguity of the reference to "the Henry Phelps or Mrs. Anna Phelps property."

We shall consider only whether the terms of the sale have been sufficiently stated in the endorsement

---

[9] General Statutes § 52-550 provides as follows: "No civil action shall be maintained upon any agreement, whereby to charge any executor or administrator, upon a special promise to answer damages out of his own estate, or against any person upon any special promise to answer for the debt, default or miscarriage of another or upon any agreement made upon consideration of marriage or upon any agreement for the sale of real estate or any interest in or concerning it or upon any agreement that is not to be performed within one year from the making thereof, unless such agreement, or some memorandum thereof, is made in writing and signed by the party to be charged therewith or his agent; but this section shall not apply to parol agreements for hiring or leasing real estate, or any interest therein, for one year or less, in pursuance of which the leased premises have been or are actually occupied by the lessee, or any person claiming under him, during any part of such term."

signed by the decedent to comply with the statute because this question is dispositive. The mere absence of a time for performance in a contract of sale does not ordinarily make it unenforceable, because the law will imply a reasonable time for performance if none has been specified. *Parkway Trailer Sales, Inc.* v. *Wooldridge Bros., Inc.,* 148 Conn. 21, 26, 166 A.2d 710 (1960); *Texas Co.* v. *Crown Petroleum Corporation,* 137 Conn. 217, 227, 75 A.2d 499 (1950). The complaint alleges, however, that from the date of the agreement, August 27, 1970, until the death of Anna Phelps on February 3, 1976, the plaintiff paid $3100 upon the agreed price of $5000, leaving a balance of $1900. It alleges further that the property tax payments, repairs and renovations made by the plaintiff were to be credited upon the purchase price. Under the circumstances alleged, a reasonable time for performance of the contract of sale on the part of the plaintiff could never be deemed to extend beyond a period of nearly six years in the absence of some additional agreement with the decedent not contained in the writing relied upon. Similarly, if the payments of taxes and the value of repairs and renovations were to be applied to the purchase price of the property, some other arrangement with the decedent must have been made orally modifying the original writing, which must be presumed to call for payment in cash in the absence of a statement of other terms. *Santoro* v. *Mack,* 108 Conn. 683, 689, 145 A. 273 (1929). The proof of such additional agreements with the decedent is, of course, prohibited by the statute of frauds, which requires all of the essential terms of a contract for the sale of realty to be in writing. We conclude that the trial court was correct in ruling that the writing pleaded

by the plaintiff did not sufficiently set forth the terms of the agreement with the decedent to comply with the statute.

The first count of the complaint also alleged that the payment of $3100 on the purchase price, the payment of the property taxes, and the furnishing of labor and materials in the repairs and renovation of the premises "to the extent of $6,300.00" were actions in pursuance of the contract of sale. "In those cases where one party, in reliance upon the contract, has partly performed it to such an extent that a repudiation of the contract by the other party would amount to the perpetration of a fraud, equity looks upon the contract as removed from the operation of the statute of frauds and will enforce it by specific performance or give other relief as the case may be." *Santoro* v. *Mack,* supra, 690. The acts of part performance must be of such a character that they can be reasonably accounted for in no other way than by the existence of some contract in relation to the subject matter in dispute. *Rutt* v. *Roche,* 138 Conn. 605, 608, 87 A.2d 805 (1952). The question is whether the facts provable within the framework of the complaint, giving its allegations a construction as favorable to the plaintiff as reasonable, would bring his case within these principles. Id., 608–609.

It is generally held that partial or even full payment of the purchase price for the sale of land under an oral contract does not take the case out of the statute of frauds. *Santoro* v. *Mack,* supra, 691; *McMahon* v. *Plumb,* 88 Conn. 547, 553, 92 A. 113 (1914); *Kimberly* v. *Fox,* 27 Conn. 307, 316 (1858). The reason usually given for this rule is that the purchaser normally may have restitution of the

consideration paid so that his predicament does not warrant the application of an equitable doctrine designed to prevent the statute of frauds itself from becoming an "engine of fraud." 73 Am. Jur. 2d, Statute of Frauds § 436; see *Harmonie Club, Inc.* v. *Smirnow,* 106 Conn. 243, 249, 137 A. 769 (1927). The same reasoning would also apply to the payment of property taxes on the land in question, an act which alone has not usually been deemed sufficient to save an agreement from the effect of the statute. 73 Am. Jur. 2d, Statute of Frauds § 450. The construction of substantial improvements on the land by the purchaser, however, has been regarded as the strongest and most unequivocal act of part performance by which an oral contract to purchase land is taken out of the statute of frauds. 73 Am. Jur. 2d, Statute of Frauds § 424. The making of valuable improvements alone in reliance on the vendor's promise has been deemed sufficient by many authorities to allow specific enforcement of the contract. 1 Restatement, Contracts § 197;[10] 73 Am. Jur. 2d, Statute of Frauds § 425. Our cases also have given the making of improvements a special significance as an act of part performance. See *Putnam, Coffin & Burr, Inc.* v. *Halpern,* 154 Conn. 507, 515, 227 A.2d 83 (1967); *Padula* v. *Padula,* 138 Conn. 102, 108, 82 A.2d 362 (1951); *Rienzo* v. *Cohen,* 112 Conn. 427, 431, 152 A. 394 (1930). Usually the making of improvements has occurred in combination with possession, another significant circumstance. *Rienzo* v. *Cohen,*

---

[10] The Restatement of Contracts § 197 provides as follows:

"§ 197. CONTRACTS SPECIFICALLY ENFORCEABLE BECAUSE OF PART PERFORMANCE. Where, acting under an oral contract for the transfer of an interest in land, the purchaser with the assent of the vendor (a) makes valuable improvements on the land, or (b) takes possession thereof or retains a possession thereof existing at the time of the bargain, and also pays a portion or all of the purchase price, the purchaser or the vendor may specifically enforce the contract."

supra; cf. *Putnam, Coffin & Burr, Inc.* v. *Halpern,* supra. The absence of an allegation of possession[11] was specifically mentioned in the memorandum granting the motion to strike. Possession, however, is not a prerequisite, although it may be highly significant in establishing the reasonable reliance upon the oral contract which is essential. 1 Restatement, Contracts § 197; see 73 Am. Jur. 2d, Statute of Frauds § 413. The modern tendency is to deemphasize particular kinds of acts as formulae for the application of an equitable doctrine designed to relieve one who has reasonably relied upon a promise of another from a substantial detriment entailed by the change of position so induced.[12] We approve this approach.

Applying these principles to the first count of the complaint before us, which we must construe most favorably to the plaintiff in reviewing the action of the court upon the motion to strike, we are satisfied that it states acts of part performance which a trier might reasonably conclude to be sufficient to remove the case from the operation of the statute of frauds. The acts pleaded are not to be weighed separately but must be considered as a whole. The allegation of furnishing "labor and material toward the repair and renovation of the premises" may be

[11] The statement of facts in the plaintiff's brief indicates that he was living in the household of the decedent. The amended complaint to which the motion to strike was addressed contains no such allegation. We must, therefore, ignore this statement in the brief.

[12] 1 Restatement (Second), Contracts § 129 reframes § 197 as follows: "A contract for the transfer of an interest in land may be specifically enforced notwithstanding failure to comply with the Statute of Frauds if it is established that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement."

construed as a claim of substantial improvements which alone might support the maintenance of the action. 1 Restatement, Contracts § 197. It is not evident from the complaint that restitution would be available to the plaintiff or would provide an adequate remedy to relieve him from the substantial detriment he claims to have suffered in reliance upon his agreement with the decedent. We find error in the ruling of the trial court striking the first count for insufficient allegations of part performance.

## II

In considering the claim of error in the rendition of summary judgment, *Pickett, J.,* on the second count of the complaint for failure to comply with the nonclaim statute; General Statutes § 45-205;[13] we are met at the outset with a contention of the plaintiff that this decision effectively reversed the ruling of a coordinate judge, *N. O'Neill, J.,* who had denied the defendant's motion to strike that

[13] General Statutes (Rev. to 1975) § 45-205 provided as follows: "The court of probate may order executors and administrators to cite the creditors of the deceased whose estate is in settlement before it to bring in their claims against such estate within such time, not more than twelve months nor less than three months, as it limits, by posting a notice to that effect on the signpost nearest to the place where the deceased last dwelt and in the same town or by publishing the same in a newspaper having a circulation in the probate district in which such estate is in settlement, or both, and by such further notice as such court deems necessary, or, if such deceased was not a resident of this state, by posting such notice on such signpost in the probate district in which such estate is in settlement, and by such other notice as such court may direct. If any creditor fails to exhibit his claim within the time limited by such order, he shall be barred of his demand against such estate; but, when a right of action accrues after the time limited for the presentation of claims, it shall be exhibited within four months after such right of action accrues and shall be paid out of the estate remaining after the payment of the debts exhibited within the time limited. Such court may, for cause shown upon hearing after public notice, limit a further time

count which relied upon the same ground. See *State* v. *Deep,* 181 Conn. 284, 286, 435 A.2d 333 (1980). "A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if 'he had himself made the original decision." *Santoro* v. *Kleinberger,* 115 Conn. 631, 638, 163 A. 107 (1932). This principle has been frequently applied to an earlier ruling during the pleading stage of a case such as that upon the motion to strike before us. See *State* v. *Sul,* 146 Conn. 78, 83, 147 A.2d 686 (1958); *Albrecht* v. *Rubinstein,* 135 Conn. 243, 247, 63 A.2d 158 (1948); *Dawson* v. *Orange,* 78 Conn. 96, 129, 61 A. 101 (1905). It has also been followed in other contexts. See *Christiano* v. *Christiano,* 131 Conn. 589, 596, 41 A.2d 779 (1945); *Santoro* v. *Kleinberger,* supra. "According to the generally accepted view, one judge may, in a proper case, vacate, modify, or depart from an

for the presentation of claims not exceeding the period which it might have originally limited; and may, if any creditor, through no default of his own, has failed to present his claim within the time limited, for cause shown upon hearing after public notice, extend the time for such creditor to present his claim not more than thirty days beyond the period which it might have originally limited. Failure of an executor or administrator to cause proper notice limiting the time for presentation of claims against such estates to be published or posted as required by the probate order within thirty days from the issuance of such order by the court of probate shall be deemed a noncompliance with such order and shall be cause for a further order of limitation to creditors. The amount of a claim may not be increased after the time for the presentation of such claim has expired. No notice of claim shall be required under this section of any claim founded in tort or of any claim on which an action is pending in any court against the decedent at the time of his death. If any person against whom a claim founded in tort exists dies on the day the applicable statute of limitation expires or within thirty days prior to such day, a period of thirty days from the appointment of his executor or administrator shall be allowed within which to commence suit."

interlocutory order or ruling of another judge in the same case, upon a question of law." 46 Am. Jur. 2d, Judges § 46; annot., 132 A.L.R. 14, 49.

The law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked. See 18 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4478. In essence it expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power. *Messenger* v. *Anderson,* 225 U.S. 436, 444, 32 S. Ct. 739, 56 L. Ed. 1152 (1912). "New pleadings intended to raise again a question of law which has been already presented on the record and determined adversely to the pleader are not to be favored. . . . But a determination so made is not necessarily to be treated as an infallible guide to the court in dealing with all matters subsequently arising in the cause." *Wiggin* v. *Federal Stock & Grain Co.,* 77 Conn. 507, 516, 59 A. 607 (1905). Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. *State* v. *Hoffler,* 174 Conn. 452, 462–63, 389 A.2d 1257 (1978); *State* v. *Mariano,* 152 Conn. 85, 91–92, 203 A.2d 305 (1964), cert. denied, 380 U.S. 943, 85 S. Ct. 1025, 13 L. Ed. 2d 962 (1965).

A judge should hesitate to change his own rulings in a case and should be even more reluctant to over-rule those of another judge. 1B Moore's Federal Practice (2d Ed.) ¶ 0.404 [4]. Judge shopping is not to be encouraged and a decent respect for the

views of his brethren on the bench is commendable in a judge. Nevertheless, if the case comes before him regularly and he becomes convinced that the view of the law previously applied by his coordinate predecessor was clearly erroneous and would work a manifest injustice if followed, he may apply his own judgment. *Dictograph Products Co.* v. *Sonotone Corporation,* 230 F.2d 131, 135 (2d Cir. 1956); *Gatewood* v. *United States,* 209 F.2d 789, 793 (D.C. Cir. 1953). The adoption of a different view of the law by a judge in acting upon a motion for summary judgment than that of his predecessor in considering such a motion or some other pretrial motion is a common illustration of this principle. *Dictograph Products Co.* v. *Sonotone Corporation,* supra; *Bowles* v. *Wilke,* 175 F.2d 35 (7th Cir. 1949); *Schaffran* v. *Mt. Vernon-Woodberry Mills, Inc.,* 70 F.2d 963 (3d Cir. 1934); *GAF Corporation* v. *Circle Floor Co.,* 329 F. Sup. 823 (S.D.N.Y. 1971); 20 A.L.R. Fed. § 10. From the vantage point of an appellate court it would hardly be sensible to reverse a correct ruling by a second judge on the simplistic ground that it departed from the law of the case established by an earlier ruling. 18 Wright, Miller & Cooper, supra § 4478; *Parmelee Transportation Co.* v. *Keeshin,* 292 F.2d 794, 797 (7th Cir.), cert. denied, 368 U.S. 944, 82 S. Ct. 376, 7 L. Ed. 2d 340 (1961). In an appeal to this court where views of the law expressed by a judge at one stage of the proceedings differ from those of another at a different stage, "the important question is not whether there was a difference but which view was right." *Dawson* v. *Orange,* 78 Conn. 96, 129, 61 A. 101 (1905). Our statements in *State* v. *Deep,* which did not relate to the merits of the appeal or its disposition, were not intended to chart a departure from these well established principles, but merely

to indicate that questions relating to the propriety of a judge's charge to a grand jury should be reviewed at the trial court level solely by the author as in the case of a charge to a petit jury, in the absence of some exigency, such as unavailability.[14]

We reject the notion that the view of the applicability of the nonclaim statute to the second count expressed by Judge O'Neill in ruling upon the motion to strike was binding upon Judge Pickett when he considered the motion for summary judgment.

The statute of nonclaim provides that a creditor must present his claim against the estate by the time set by the Probate Court within the statutory limits of three to six months from the date of the order or be barred of his demand. It appears from the affidavits filed in connection with the motion for summary judgment that the Probate Court ordered all claims against the estate of Anna Phelps to be presented on or before May 17, 1976, and that the plaintiff submitted no claim by that date. The purpose of the statute is to inform an administrator or executor of what claims may have to be paid out of the estate; *State* v. *Goldfarb,* 160 Conn. 320, 325, 278 A.2d 818 (1971); *Padula* v. *Padula,* 138 Conn. 102, 107, 82 A.2d 362 (1951); and thereby to permit the speedy settlement of estates. *Lubas* v.

---

[14] In *Maloney* v. *Pac,* 183 Conn. 313, 318–19, 439 A.2d 349 (1981), we said that the trial judge there was bound by an earlier determination of the nature of the regulation before him which had been made by another judge in a separate suit with the same parties which had gone to final judgment without any appeal. This statement was correct under well established principles of collateral estoppel; *Connecticut Light & Power Co.* v. *Tax Commissioner,* 169 Conn. 58, 62, 362 A.2d 958 (1975); 1B Moore's Federal Practice (2d. Ed.) ¶ 0.441 [2]; and did not depend upon the principles of the law of the case referred to in *State* v. *Deep,* 181 Conn. 284, 285, 435 A.2d 333 (1980).

*McCusker*, 153 Conn. 250, 254, 216 A.2d 289 (1965). The propriety of the summary judgment in this case depends upon whether the policy of the nonclaim statute requires the presentation of such a claim as the one before us.

A claim which is characterized as an existing obligation of the decedent and would be paid out of the estate as a whole falls within the statute and must be presented. *Padula* v. *Padula,* supra, 107. The word "claim" as used in the statute "means those obligations which are in the broad sense of the term, debts" and would include "obligations arising out of contract express or implied." *Sherwood* v. *Bridgeport,* 123 Conn. 348, 351, 195 A. 744 (1937). The word was taken to apply also to claims founded in tort; id.; *Lubas* v. *McCusker,* supra; until an amendment in 1967 specifically[15] excepted such claims[16] from the statute. Not only debts already due and payable but also those which have not matured must be presented, "for these are nevertheless existing obligations and capable of proof." *Roth* v. *Ravich,* 111 Conn. 649, 652, 151 A. 179 (1930).

A claim for the recovery of specific property is not within the statute of nonclaim. *Dennen* v. *Searle,* 149 Conn. 126, 140, 176 A.2d 561 (1961); *Padula* v. *Padula,* supra, 107. "A claim for specific property in the hands of the administrator is

[15] See Public Acts 1967, No. 558, § 49. Claims on which an action is pending in any court against the decedent at the time of his death have been exempt from the nonclaim statute since 1965. See Public Acts, Spec. Sess., Feb. 1965, No. 287.

[16] The plaintiff does not maintain that his claim is one "founded in tort," although the complaint does assert that the refusal of the administrator to reimburse him for the consideration received by the decedent "constitutes a constructive fraud." No actual fraud against the decedent or his administrator is pleaded.

deemed to be a claim 'against the administrator' but not 'against the estate;' for such property, though in the hands of the administrator, is not part of the estate and the claim for it is not a 'debt' of the estate." 2 Locke & Kohn, Conn. Probate Practice § 474, p. 504. For this reason the claim for specific performance in the first count of the complaint is not subject to the nonclaim statute.

A claim which is contingent is also exempt from the presentation requirement. *Roth* v. *Ravich,* supra, 652; *Bacon* v. *Thorp,* 27 Conn. 251, 260 (1858) ; *Ryder* v. *Hertz Corporation,* 29 Conn. Sup. 9, 12 (1970). "It would seem to be too obvious to need argument, that there can be no neglect or omission in not presenting for allowance and payment demands which do not exist, or, if they do, are not sufficiently definite and appreciable to be capable of a just and legal adjudication . . . ." *Bacon* v. *Thorp,* supra. Examples of such contingent claims have been cited to include those against a deceased person for breach of a covenant of warranty upon a fire policy, and upon a guaranty of a debt, where the particular event giving rise to liability has not occurred prior to death. Id., 261. Our statute of nonclaim makes special provision for presenting claims where the right of action has accrued after the expiration of the time limitation originally set by the Probate Court. General Statutes § 45-205. Where the liability depends upon some future uncertain event the claim is contingent and its presentation would not "hasten the final settlement of the estate, or in any way advance the interests of those who are to enjoy the estate." *Bacon* v. *Thorp,* supra, 260; 31 Am. Jur. 2d, Executors and Administrators § 283. To reserve against such contingencies would greatly impede the speedy settlement of an estate.

*Bacon* v. *Thorp,* supra, 260–62. The distribution of an estate would not be an insurmountable barrier to a recovery on an after-accruing claim. 2 Locke & Kohn, supra, § 480; see *State* v. *Northrop,* 93 Conn. 558, 569, 106 A. 504 (1919).

The plaintiff's claim in the second count is essentially for restitution of the benefits received by the decedent at his expense. The allegations refer to two theories of recovery: (1) unjust enrichment and (2) constructive trust. Unlike the first count which seeks the conveyance of particular property, the second count demands damages which would have to be paid out of the estate as a whole. Unjust enrichment, of course, is a quasi-contractual theory of recovery. *Brighenti* v. *New Britain Shirt Corporation,* 167 Conn. 403, 407, 356 A.2d 181 (1974); *Cecio Bros., Inc.* v. *Greenwich,* 156 Conn. 561, 564–65, 244 A.2d 404 (1968); 12 Williston, Contracts (3d Ed. Jaeger) § 1469. The allegation that the total consideration conferred upon the decedent by the plaintiff exceeded the purchase price of the property would indicate that this claim had ripened into a viable cause of action even before the death of the decedent. The fact that if the plaintiff should prevail on the first count there could be no restitution awarded under the second count does not in our judgment render this claim conditional or contingent. Where a person has alternative or overlapping claims there is no reason to excuse him from presenting those which the nonclaim statute would otherwise require to be brought to the attention of the administrator.

The plaintiff's attempt to impress a constructive trust upon the estate to the extent of the consideration received by the decedent relies upon the analogy

of an express or implied trust where the nonclaim statute has been held to be no barrier to the recovery of trust assets which have been included in the estate of a decedent. *McDonald* v. *Hartford Trust Co.,* 104 Conn. 169, 189, 132 A. 902 (1926) ; *Connecticut Trust & Safe Deposit Co.* v. *Security Co.,* 67 Conn. 438, 444, 35 A. 342 (1896) ; *Proprietors of White School House* v. *Post,* 31 Conn. 240, 260 (1862). He founders, however, upon the problem of identifying and tracing that essential ingredient of a trust, the res. Neither the complaint nor the affidavits allege that Anna Phelps was under any obligation to hold any of the consideration received apart from her general assets, and we cannot imply any such duty on her part based upon the facts before us. No wrongful conduct upon the part of the decedent is claimed which would support the imposition of a constructive trust. Although it is true that the value of her estate has been enhanced by the consideration provided by the plaintiff, his position in that respect is no different from that of any creditor. Any unpaid debt of a decedent increases his estate to that extent. To regard this increment of value as a res for the purpose of impressing a constructive trust for the benefit of a creditor, which would obviate the necessity of presenting the debt to the administrator, would wholly frustrate the salutary purpose of the nonclaim statute. In *Grant* v. *Grant,* 63 Conn. 530, 545, 29 A. 15 (1893), this court had before it an oral contract and also a quantum meruit claim for services performed in reliance upon that contract, a situation similar to the present case. In concluding that the nonclaim statute was applicable, the court said, "[t]he damages are capable of computation, since they are to be measured by the pecuniary loss and injury on the one side, and the

pecuniary benefit and advantage on the other." Where the relief requested is the recovery of money out of an estate, to require presentation is consonant with the purpose of the statute. We agree with the conclusion of the trial court that the second count of the complaint is barred from prosecution by the statute of nonclaim.

There is error with respect to the granting of the motion to strike the first count of the complaint. There is no error with respect to the judgment upon the second count. The judgment is set aside and the case is remanded to the trial court for further proceedings upon the first count of the complaint in accordance with this opinion.

In this opinion the other judges concurred.