[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS
In the sixth count of a revised complaint dated September 19, 2000, the plaintiff alleges that on July 19, 1999, the defendant Freight Force contracted for the shipment of cable from Bradley International Airport to Old Saybrook. The cable was allegedly damaged during shipment. The complaint goes on to allege that the defendant on said date, through an employee, acknowledged possible damage to the cable "by initiating a notation to that effect on his delivery alert form." Paragraph 3. Paragraph 4 goes on to allege that "immediately subsequent thereto, the defendant's agent and/or employee modified, altered or destroyed his copy of the delivery alert form." Allegedly, "an altered, modified and/or forged delivery alert form" was substituted and made no reference to the damage done to the cable. Paragraph 6 goes on to allege that these actions constituted an unfair and deceptive act or practice in trade or commerce — they "were wanton and malicious and/or demonstrated reckless indifference to the rights of others," in violation of the Connecticut Unfair Trade Practices Act, § 42-110 et. seq. "CUTPA." Paragraph 7 alleges that as a result of the defendant's actions, it suffered an ascertainable loss of money.
The defendant, Freight Force, has filed a motion to dismiss directed against the entire revised complaint, although the first four counts appear to be directed against separate legal entities from Freight Force who along with the latter company were in some manner involved in the shipment of the cable. It should be noted that in addition to the CUTPA claim against Freight Force, a claim is asserted against the same defendant for negligently damaging the cable.
The underlying basis of the motion to dismiss is grounded on the claim that certain federal statutes directed at the regulation of interstate commerce by commercial carriers have preempted effect and thus bar state law claims.
In the motion to dismiss now before the court, the defendant, Freight CT Page 12113 Force, makes only passing reference to any substantive argument, but asserts that another judge in ruling on a motion to dismiss a separate third party complaint filed by the co-defendant, Yellow Freight, dealt with the same issues presented by the motion to dismiss now before the court. In that previous motion, the memorandum submitted by counsel argued that "claims involving a carrier's services are preempted by49 U.S.C.A. § 14501(c). It should be noted that the memorandum also referred to preemption afforded by the so-called Carmack Amendment to the ICC Termination Act of 1995, 49 U.S.C.A. § 14706.
The judge who heard that motion granted it presumably on the grounds advanced — no memorandum of decision was filed, but the court in response to a motion for articulation did give as the basis of its ruling that there was no subject matter jurisdiction. Thus, the court agreed to the federal preemption claim made in the previously filed motion. In the present motion directed at the revised complaint, the defendant, Freight Force, argues the action of the other judge in granting the motion to dismiss as to the third party complaint is the law of the case. In Breenv. Phelps, 186 Conn. 86, 99 (1982), the court said that a judge should hesitate to change his or her own rulings in a case and "should be even more reluctant to overrule those of another judge." On the following page, the court did say that if a subsequent judge "becomes convinced that the view of the law previously applied by his (or her) coordinate predecessor was clearly erroneous and would work a manifest and justice, if followed, he (or she) may apply his (or her) own judgment." The plaintiff's main argument in opposing the motion to dismiss now before the court centers on its view that federal preemption does not apply to the CUTPA count — there is no stated opposition to the dismissal of the negligence count against Freight Force. The plaintiff maintains that the prior judge did not address the applicability of federal preemption as it applied to an unfair trade practices claim but just applied the federal preemption analysis to claims of negligence and an indemnification claim made in the third party complaint. When this court heard oral argument, it assumed that the prior judge's rulings were still in effect and at one point said that if it was about to take any action that would contradict that judge's earlier decision, it would refer the case back to the previous judge. The plot appears to thicken further, however, because from an examination of the file, it appears that the previous judge, in fact, vacated all of his prior rulings.
Turning to the merits of this motion to dismiss, it would appear that the prior decision made by another judge handling this case only applied federal preemption to a negligence claim and an indemnification claim based on allegations of negligence. That is, even if this court agrees with the prior judge's dismissal, on federal preemption grounds, of the two counts against Yellow Freight does that mean the CUTPA claim here CT Page 12114 should be dismissed if law of the case reasoning were to apply? Or to approach the problem from another perspective the court can first itself decide whether a CUTPA claim is precluded by federal preemption. If it so decides, the court need not worry about law of the case concerns. The question presented then is whether the previously cited federal statutes preclude an unfair trade practices claim under state law. Only if the court concludes that they do not must it determine if such a ruling would contradict any previous ruling by another judge which barred a negligence claim because of federal preemption (even assuming such a ruling is still outstanding in this case).
The court will first refer to the relevant portions of the federal statutes in question.
 49 U.S.C.A. § 14501(c). ". . . a state . . . may not enact or enforce a law, regulation or other provision having the force and effect of law related to a price, route or service of any motor carrier . . . with respect to the transportation of property."
 49 U.S.C.A. § 14706(a). "A carrier providing transportation or service . . . shall issue a bill of lading for property it receives for transportation . . . that carrier and any other carrier that delivers the property and is providing transportation or service . . . are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivery carrier, or (C) another carrier over whose line or route the property is transported in the United States . . ."
The preceding section is the so-called Carmack Amendment and provisions similar to this section were contained in §§ 10730 and 11707 of title 49 prior to the general amendment to the title which occurred in 1995. Subsection (d)(2) of § 14706 provides that "A civil action under this section may be brought in a United States district court or in a state court." This last quoted language is not determinative of the issue before the court. It is clear that federal claims, such as § 1983 actions, can and are brought in state courts; the question here rather is whether a state claim based on state common or statutory law can be brought against a carrier under the circumstances of this case.
Against the federal statutory background the plaintiff, in arguing against preemption, says that the defendant Freight Force "is under the CT Page 12115 faulty presumption that the allegations against it center upon its negligence in the shipment of cable from Bradley Field . . . to Old Saybrook." Rather, the plaintiff argues its CUTPA claim is focused on the defendant's "intentional effort to cover up the damage to the cable." Nothing in the federal statutes refer to intentional efforts to cover up wrongdoing on the part of a carrier.
This argument requires a discussion of how the federal statutes have been interpreted. Section 14-501 (c) bars the application of state law "related to price, route or service." The language "related to" has been given a broad reading by the federal Supreme Court. In Deerskin TradingPost, Inc. v. UPS of America, 972 F. Sup. 665, 668 (N.D.Ga., 1997), the court points out that the House Conference Report on § 14501(c) defined the preemption provisions of that statute to be identical to the preemption provisions deregulating air carriers. In Morales v. Trans WorldAirlines, Inc., 504 U.S. 374 (1992), the court interpreted the Airline Deregulation Act and said the language "related to" in that act is to be given a broad meaning — it means "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with," id. p. 383.
In Deerskin Trading Post, the court ruled that the broad reading required by the quoted language of § 14501(c) required a finding that federal law preempted state claims for common law fraud and statutory fraud among other claims such as negligence and unjust enrichment. There, the basic factual setting for the claims was that the defendant systematically imposed improper weight charges on packages being shipped, 972 F. Supp. at p. 672. Basically, part of the claim against the defendant was based on deceptive practice in pricing, not the pricing schedule itself.
In this case, given the broad reading that must be given to § 1450 (c), it is difficult to see how deception in covering up damage to goods is not "related to" the "service" given to users of this mode of transportation in interstate commerce. Also, how can it be said that covering up of damage to goods is not "related to" service in the sense that the purpose of the cover up and deception would have presumably been to avoid responsibility for damage to the cable and thus to forestall an action against the carrier for loss or damage to the property being transported, a remedy provided for in § 14706. In other words, § 14-501 (c) and § 14706 must be read together.
An instructive case is Rini v. United Van Lines, 104 F.3d 502 (CA 1, 1997). In that case, a woman hired the defendant to move her household goods to Massachusetts from South Carolina. When they arrived, several items were missing and she filed a claim against United which resulted in CT Page 12116 acrimonious exchanges. The plaintiff then filed a claim in district court based on the Carmack Amendment and state law claims of negligence, misrepresentation, use of unfair and deceptive acts in violation of the Unfair Trade Practices Act of Massachusetts and intentional infliction of emotional distress. The jury found for the plaintiff on the federal claim (§ 14706) and on the state claims of misrepresentation and negligence. The district court found a willful violation of the Massachusetts Unfair Trade Practices Act. Damages were awarded which included an award for attorney's fees. The court of appeals had to decide whether the Carmack Amendment preempted recovery under the state law claims. The court found that preemption was made necessary under the Supremacy Clause of the federal constitution. The court at pp. 504-505 said that "the Supreme Court case law does not provide clear guidance on the reach of the preemption doctrine. In particular, the court has not clarified the extent to which state law provisions pertaining to the claims process as opposed to the shipping of goods, are preempted." The court relied on an older Supreme Court case, Charleston WesternCarolina Ry. Co. v. Varnville Furniture Co., 237 U.S. 597 (1915), and said at page 506:
 "In light of the court's holding in Varnville, we find that all state laws that impose liability on carriers based on the loss or damage of shipped goods are preempted. A state law `enlarges the responsibility of the carrier for loss or at all affects the ground of recovery, or the measure of recovery,' id. at 603, 35 S.Ct. at 716, where, in the absence of an injury separate and apart from the loss or damage of goods, it increases the liability of the carrier. Preempted state law claims, therefore, include all liability stemming from damage or loss of goods, liability stemming from the claims process, and liability related to the payment of claims. Thus, the forty day limit for payment at issue in Varnville is preempted. On the other hand, liability arising from separate harms — apart from the loss or damage of goods — is not preempted. For example, if an employee of the carrier assaulted and injured the shipper, state law remedies would not be preempted. Similarly, a claim for intentional infliction of emotional distress alleges a harm to the shipper that is independent from the loss or damage to goods and, as such, would not be preempted.
 In the instant appeal, the state law claims at issue all stem from the loss of goods. The alleged CT Page 12117 negligence and misrepresentation took place in the course of settling a claim for damages stemming from the move. Rini suffered no harm other than the loss of goods and, therefore, her state law claims are preempted by the Carmack Amendment. Had Rini prevailed on her claim for intentional infliction of emotional distress, it would not have been preempted. Because the three state claims at issue in this appeal involve no injury save the loss of property, however, we find them to be preempted."
The Rini relied heavily on a Second Circuit case which is of particular significance for a state court within that circuit's ambit trying to decide a federal preemption claim. The Rini court said:
 "Our conclusion is consistent with the view taken by the Second Circuit in Cleveland v. Beltman North American Company, 30 F.3d 373 (2d Cir. 1994), cert. denied ___ U.S. ___, 115 S.Ct. 901, 130 L.Ed.2d 785
(1995). In that case, the court described the plaintiffs' allegations as follows:
 In handling plaintiffs' claims, the moving company — in a deliberate and determined effort to frustrate plaintiffs' collection of damages for their losses — was guilty of footdragging and stonewalling. It did not deal fairly and in good faith with the couple.
 Id. at 374. The claim addressed by the court was a federal common law claim for breach of an implied covenant of good faith and fair dealing in the claims process, damages from which `were to be exclusive of damages awarded for actual loss under the bill of lading.' Id. at 376. The Second Circuit held that there could be no federal common law claim for a breach of the implied covenant of good faith and fair dealing. Id. at 379. In so deciding, the court concluded that "[a] claim for breach of the implied covenant of good faith and fair dealing resulting in an award of punitive damages could well thwart one of the primary purposes of the Carmack Amendment; that is, to provide some uniformity in the disposition of claims brought under a bill of lading." Id. Although Cleveland dealt with an issue of federal common law, the same reasoning implies that state law remedies for CT Page 12118 loss or damage to goods would be preempted.
 The instant case presents the same question as did Cleveland. We face a plaintiff who has been ill-treated in her attempts to settle her claim with United."
Whether or not a claim arises out of the "claims process" is not controlling, the real question is whether the claim is based on harm suffered due to loss or damage to goods. In Hughes v. United Van Lines,829 F.2d 1407, 1415 (CA 7, 1987), the court said; "The purpose of the Carmack Amendment is to establish uniform federal guidelines designed in part to remove the uncertainty surrounding a carrier's liability when damage occurs to a shipper's interstate shipment." If a claim does arise out of loss or damage to goods then to subject such a claim to state law claims, statutory or common law, providing, for example, for punitive damages would destroy uniformity of treatment of carriers in interstate commerce.
If the CUTPA count in the revised complaint is examined it refers to the fact that the cable was damaged and rendered unsalvageable; it then alleges that after noting this on the appropriate form an employee of the defendant destroyed the form and submitted another document which made no reference to damage to the cable. These actions which are characterized as unfair and deceptive under CUTPA in paragraph 7 are made the basis for an allegation that "the plaintiff has suffered (an) ascertainable loss of money."
It has been said that when a motion to dismiss does not seek to introduce facts outside the record it admits all well pleaded facts and the complaint is construed most favorably to the plaintiff. Duguay v.Hopkins, 191 Conn. 222, 227 (1983). But how far does this go? CUTPA requires proof of ascertainable loss and it has been defined as "a threshold barrier which limits the class of persons who may bring a CUTPA action," Hinchcliffe v. American Motors Corp., 184 Conn. 607, 614
(1981). Referring to Hinchcliffe, the court in Service Road Corp. v.Quinn, 241 Conn. 630, 638-639 (1997), said, "An ascertainable loss is a deprivation, detriment (or) injury that is capable of being discovered, observed or established . . . (a) loss is ascertainable if it is measurable even though the precise amount of the loss is unknown."
Looking at the four corners of the CUTPA count, what other loss of money could there be that is not based on the loss caused by damage to the cables? It is possible to infer that the alleged deceptive acts of the defendant's agents were aimed at trying to establish that any damage to the cable was done after the defendant had delivered the cable CT Page 12119 — but in such a scenario the ascertainable loss would still be based on damage done to the cable by the defendant. That was what the defendant was trying to conceal. The duty to give every favorable inference to a complaint under subject matter jurisdiction attack does not permit a court to speculate as to possible theories of recovery not fairly implied in the language of the complaint — that would be unfair to opposing counsel. For the court to make a reasonable inference there must be an adequate factual predicate and no factual predicate has been set forth in the complaint or supplied by affidavits or documentation to indicate that any ascertainable loss arises from any other source than damage to the cables.
The court will grant the motion to dismiss the negligence and CUTPA counts against Freight Force.
Corradino, J.