MARY E. WIGGIN vs. THE FEDERAL STOCK AND GRAIN
· COMPANY.

First Judicial District, Hartford, October Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

77  507
77 _526

When the terms of an executory contract leave it uncertain whether the purpose to be accomplished and the things to be done are legal or illegal, illegality will not be presumed, but the contract will be so construed *ut res magis valeat quam pereat.*

Each of twenty-two contracts stipulated for the delivery by the defendant to the plaintiff, on three days' notice, of certain shares of stock at a price named, and required the plaintiff to receive them, unless she elected to surrender the contract, in which case the defendant was to pay her a sum equal to the then advance in the market price of the stock. In case of a decline in the market price equal to the amount of all the deposits, the contract was to terminate, and the deposits became the absolute property of the defendant. Sixteen of the contracts contained the words "Protect in full," or words equivalent thereto, the meaning of which was in dispute ; while six of them had no such words. The complaint alleged that under these contracts, which were made part of it, it was the de-·fendant's duty to advance any moneys necessary to cover declines in the market value of the stocks named in each, notifying the plaintiff, who was then to repay such advances on demand ; but that instead of so doing the defendant sold out all the stocks upon a sharp decline in the market, without notice to plaintiff, whereby she was damaged to an amount equal to the sum of her deposits ; that as soon as she learned of this she tendered the defendant a · sum equal to any deficiency which existed in her deposits, demanding the execution of the contracts or a return of her deposits; and that the defendant refused to do either. *Held:*—

1. That the contracts did not appear upon their face to be gambling ones; and therefore upon a demurrer the plaintiff was entitled to have them treated as valid agreements.

2. That it was not necessary for the complaint to allege that an actual delivery of the stocks was intended; still less that the defendant owned them.

3. That although the contracts did not on their face (independently of the words "Protect in full") impose any duty upon the defendant to make advances to any one, the complaint nevertheless alleged a breach of duty on the part of the defendant in selling out the stocks without notice.

4. That each contract was independent of every other, and that stocks

bought under one stood as security for the performance of the plaintiff's obligations under that alone.

A *bona fide* contract whereby one gives to another an option to call for stock not then owned by the former, at a future time and upon tender of a certain price, is unexceptionable.

While it is not necessary to allege matters of law in a complaint it is not always improper to do so.

If the claim of law alleged rests on an unwarranted construction placed upon a written instrument set out in the complaint, a demurrer to the allegation should attack the unsoundness of the claim rather than the impropriety of its assertion.

A paragraph of a complaint is not demurrable because its allegations of material fact are so involved with statements of law as to be wholly inseparable.

Where a contract in suit is not illegal on its face, extrinsic evidence to show its illegality is inadmissible under a general denial, or under an answer which fails to allege the facts on which the invalidity depends.

Parol evidence of a custom inconsistent with the terms of a written contract is inadmissible.

That a contract appears on its face to be of a speculative character does not necessarily affect its validity.

If a broker who has purchased and is holding stocks for a customer under a speculative contract, wrongfully sells them, he is liable in damages for the excess, if any, over the price realized by him, of the lowest sum for which the customer, acting with reasonable promptness, could have repurchased the stocks after notice of the broker's wrongful sale. If, however, the market price of the stock has fluctuated between the date of the broker's wrongful sale and the latest day to which it would have been reasonable to defer a repurchase, or the date of repurchase, if one be made within a reasonable time after the wrongful sale, the rule of damages is the difference, if any, between the price obtained when the shares were converted and the highest market price, in excess thereof, attained during such intermediate period.

While it is customary for a judge in the trial of a cause to follow the rulings of another judge made at an earlier stage of the proceedings, he is not bound to do so, but may reconsider the question when it arises later, or grant a rehearing on the issues closed on the prior pleadings, if in his opinion the original decision was erroneous.

A ruling upon demurrer, sustaining the validity of a contract declared upon, does not necessarily establish its validity upon a subsequent trial on issues of fact, evidence on which tends to show that the contract, though fair in external form, was in fact a mere cover for illegal practices.

Argued October 7th, 1904—decided January 4th, 1905.

Wiggin v. Federal Stock & Grain Co.

ACTION for breach of certain contracts relative to stock transactions, brought to the Superior Court in Hartford County, where a demurrer to the complaint was overruled (*Robinson, J.*) and the cause tried to the jury before *Case, J.·;* verdict and judgment for plaintiff. *Error and new trial ordered.*

There were twenty-two of these contracts, all in writing, and in most respects similar in form. They were made between May 1st, 1901, and December 5th, 1902. The following is a copy of one of them:

" (15)

" Not Transferable Except on the Books of the Company. Buyer's Contract.      No. 532.      (20c. stamps canceled.)

| Deposit. | | Accountant's Signature | Date of Deposit. | Stop Order Limit. | |
|---|---|---|---|---|---|
| $10.00 | 1st | R. C. B. | 4/7 | 93 | 1st |
| $10.00 | 2nd | " | 4/11 | 92 | 2nd |
| $17.50 | 3rd | " | 4/19 | 90 1/4 | 3rd |
| $10.00 | 4th | " | 5/17 | 89 1/4 | 4th |
| $10.00 | 5th | " | 5/21 | 88 1/4 | 5th |
| $10.00 | 6th | " | 6/11 | 87 1/4 | 6th |
| $17.50 | 7th | " | 7/18 | 83 1/2 | 7th |
| $17.50 | 8th | Div. | 10/21 | 83 3/4 | 8th |
| $20.00 | 9th | R. C. B. | 11/13 | 81 3/4 | 9th |
| $ | 10th | | | | 10th |

" P. full.

" Hartford, Apr. 7, 1902.

" On three days' notice we promise to deliver to Mrs. M. E. Wiggin 10 U. S. Pf. at 94, and the holder of this contract agrees to receive the same; or upon surrender of this contract, we agree to pay the holder of it a sum equal to the then advance in the market price of said commodity or stock.

" All deposits shall become the absolute property of ourselves to the amount of the decline in the market value of said commodity or stock when this contract is closed, either by further order of the holder, or when the decline in the

market value of said commodity or stock shall equal the sum of all deposits, whereupon this contract terminates.

"The holder of this contract agrees to the above terms.

"Federal Stock & Grain Co.

"R. C. Beers, Agent,

"R. C. B."

"P. full" in this paper, and in some of the others "Protect in full," "Protect to full," or "Protect," had, it was conceded, the same meaning, but there was a controversy as to what that meaning was. The plaintiff claimed that they made it the defendant's duty to give immediate notice to the plaintiff whenever the margins on her contracts became exhausted, and to allow her a reasonable time to deposit additional margins. The defendant claimed that they meant that the plaintiff would, on the day following notice that her margin was exhausted, make it good by a deposit. Six of the contracts contained no such words. The term "Div." referred to dividends paid on the stock named in the contract, all which were regularly credited to the plaintiff and entered in the column headed "Deposit." Several of the contracts related to stock on which no dividends were paid, and contained no credits on dividend account.

The contracts up to December 15th, 1902, were treated independently, and payments when made by Mrs. Wiggin were made and received upon each separate contract, and each payment was minuted as a credit upon the particular contract to which it applied.

On December 15th, 1902, the defendant closed out all of the twenty-two contracts. The plaintiff's margin on fifteen of the contracts was at that time exhausted; on the other seven it was not exhausted either then or at any time up to January 10th, 1903, inclusive. On the latter day, the plaintiff instructed the defendant to sell the stocks dealt with by her contracts, and account to her for the proceeds.

When the contracts were entered into, the plaintiff advanced a commission to the defendant of one quarter of one per cent.; half of which was compensation for the purchase of the stock by the broker, and the other half stood for com-

pensation for any future sale of the stock by the broker upon the customer's order, and was to be refunded if no such sale was made.

*J. Gilbert Calhoun,* for the appellant (defendant).

*William F. Henney* and *Harrison B. Freeman, Jr.,* for the appellee (plaintiff).

BALDWIN, J.   The complaint averred that, under the contracts which were annexed to it, it was the defendant's duty to advance any moneys necessary to cover declines in the market value of the stocks named in each, notifying Mrs. Wiggin, who was then to repay such advances on demand; that there was a sharp decline, but instead of so doing the defendant thereupon sold out all the stocks, without notice, whereby she was damaged to an amount equal to the sum of her deposits; that as soon as she learned of this she tendered it a sum equal to any deficiency which existed in her deposits, demanding that the defendant carry out the contracts or return her deposits; and that the defendant refused to do either.

This was demurred to on various grounds.   One was that the parties to the contracts contemplated a mere payment of differences between the market price of the stocks on the day of closing the contract and the agreed price, and it was not alleged that they intended an actual delivery or that the defendant ever owned such stocks.

The contracts do not appear upon their face to be gambling ones.   Each was headed "Buyer's Contract."   It stipulated for the delivery by the defendant to the plaintiff, on three days' notice, of certain shares of stock at a price named, and required her to receive them, unless she elected to surrender the contract, in which case the defendant was to pay her "a sum equal to the then advance in the market price" of the stock.   In case of a decline in the market price, equal to the amount of all the deposits, the contract was to terminate and the deposits become the absolute property of the defendant.

When the terms of an executory contract are so expressed as to leave it uncertain whether the purpose to be accomplished and the things to be done are legal or illegal, illegality will not be presumed, but the contract will be so construed, *ut res magis valeat quam pereat*. *Hamden* v. *Merwin*, 54 Conn. 418, 424. In addition to her deposits, the plaintiff, at the date of each of the contracts in question, paid to the defendant a brokerage commission on the purchase of the stock named in it, and also a commission of the same amount for selling such stock, should she order a sale. Should she not order it, the latter payment was to be refunded. These provisions were either a device to conceal the real nature of an illegal transaction, or a proper mode of compensation for services to be performed. The plaintiff was entitled, on the demurrer to the complaint, to have them treated as the latter. Thus construed, they were not inconsistent with the other terms of the contract, and the contract was not inconsistent with the law.

It follows that it was not necessary to insert in the complaint an averment that an actual delivery of the stocks was intended; still less one that the defendant owned them. Any one may lawfully agree to deliver in the future what he has not now got, if it be a thing which he may get. *Porter* v. *Viets*, 1 Biss. (U. S.) 177.

Another ground of demurrer was that it did not appear that the defendant ever owned the stocks specified, or came under any obligation to buy them until it received three days' notice from the plaintiff. This assumes that it is unlawful for one to give to another an option to call for goods not then owned by the former, at a future time, upon tender of a certain price. On the contrary, a *bona fide* contract of this nature is unexceptionable. *Story* v. *Salomon*, 71 N. Y. 420.

Further causes of demurrer were assigned to the effect that, even if the contracts were valid, no breach of duty on the part of the defendant was shown.

It is true that no duty to make any advances to anybody or under any circumstances, was thrown upon it by the con-

tracts, so far as can be determined from their face. But in addition to setting up such a duty, the plaintiff averred that the defendant, without notifying her, sold out all the stocks at a time when there had been a sharp decline in their values, whereby she had been damaged to the extent of her deposits. It could not, under the provisions contained in any of the contracts, have sold them unless they were under its ownership or control, nor unless the amount of the decline was equal to that of all the plaintiff's deposits previously made on account of them. The complaint did not show that such a decline had occurred. The plaintiff was not bound to deny that it had. Without it, the contract could not be treated by the defendant as terminated, nor the deposits as its own property. Nor could it be assumed as matter of law that a sale of such stocks on which the plaintiff had an option, and for the purchase of which by the defendant it had received from her a broker's commission, could be made without such notice as would give her a reasonable opportunity to protect her interests.

That her option had not been exercised; that she had never surrendered her contracts, nor asked for an accounting, nor ordered a sale at any particular price ; and that it did not appear that the stocks had ever advanced in value, was all immaterial. None of these things excused the defendant from treating her reasonably and fairly, in respect to any action affecting her title to her deposits.

The particular paragraph in which the duty of the defendant to make advances was alleged, was demurred to as a mere statement of a claim of law. While it is not necessary to allege matters of law, it is not always improper. Bliss on Code Pleading, § 212; *Wills* v. *Wills*, 34 Ind. 106. Whether any such duty existed or not depended on the proper construction of the contracts pleaded. To state the construction in this respect on which the plaintiff relied, was a mode of applying the law to the facts which was helpful rather than harmful to the other party. Gould on Pleading (Hamilton's Ed., 1899) p. 59. If it was an unwarranted construction, a demurrer for that cause would

have been well grounded. That filed, however, was not for that cause, and was properly overruled.

- Nor was the fourth paragraph demurrable for the cause specified, namely, that it was made up of statements of fact and of law so involved in and dependent upon each other as to be wholly inseparable. Its allegations were that the defendant, in violation of its duty under the contracts, failed to make advances and to notify the plaintiff of any deficiencies in her deposits, but sold, without notice to her, all the stocks referred to in the contracts, entailing a loss to her of a sum equal to that of all her deposits. The terms " P. full ", " Protect in full ", and " Protect ", used in several of the contracts, were in themselves meaningless. The plaintiff claimed, and the defendant afterwards admitted, that they required some notice to her before the stocks with reference to which they were used could be sold out. If this was their legal effect, the sale alleged was a breach of each contract on which these words appeared. They did not appear upon all, but this was not made a cause of demurrer. That which was assigned was untenable. The meaning of the words in question was to be alleged and proved as a matter of fact. The demurrer asserted that the allegations of law were inseparable from those of fact. If then the latter were material, the former were also. *Hill* v. *Fair Haven & W. R. Co.*, 75 Conn. 177, 180.

The evidence offered on the trial to prove that the plaintiff never in fact intended to receive any stocks on the contracts was properly excluded. The answer was substantially a general denial. As the contracts were not illegal on their face, the defendant could not show their illegality by extrinsic proof of that character, in the absence of allegations of the facts on which it might rely as invalidating them. Rules of Court, p. 48, § 160.

The defendant offered evidence that when it had made several contracts with a customer, of the nature of those in suit, and on some of these the margins had become exhausted by a fall in the prices of the stocks, although on others the margins remained sufficient, its custom was, if

upon all the contracts together there was a deficiency in the margins, to sell out all the stocks. Such a custom was inconsistent with the terms of the respective contracts, and these could not be thus varied by parol.

Evidence was properly admitted of the market quotations of the stocks named in each of the contracts from the day when they were sold out until that when the plaintiff ordered their sale.

The contracts appeared on their face to be of a speculative character. That they were such did not necessarily affect their validity. *Hatch* v. *Douglas*, 48 Conn. 116. If a broker who has purchased and is holding stocks under such an agreement makes an unauthorized sale at the stock exchange, he can hardly fail to get what is at the time their full market value. To hold him liable to account for this, and nothing more, would be to give the other party a very inadequate remedy. The real loss of the latter is that he can reap no benefit from a subsequent rise in value. Justice can only be done in such cases by requiring the broker to pay a sum sufficient to put the other party in as good a position as he had before the sale. This (except in a case calling for vindictive damages) is generally measured by the excess, if any, over the price realized, of the lowest sum for which the latter could have repurchased the stocks, after notice of the sale, had he given an order to that effect with reasonable promptness, or for which, as the case may be, he did repurchase the same, acting with reasonable promptness, after such notice. In case, however, of fluctuations in the market price' between the day of the wrongful conversion and the latest day to which it would have been reasonable to defer a repurchase, or the date of a repurchase, if a repurchase be made prior to said last mentioned day, the rule of damages would, as was correctly stated in the charge, be the difference, if any, between the price obtained when the shares were converted and the highest market price, in excess thereof, attained during such intermediate period. *Wright* v. *Bank of Metropolis*, 110 N. Y. 237 ; *Galigher* v. *Jones*, 129 U. S. 193.

The jury were correctly instructed that each contract was

independent of every other, and that the stocks bought under one stood as security for the plaintiff's performance of her obligations under that alone.

The jury were instructed that the ruling on the demurrer had conclusively established the validity of all the contracts, and removed any question as to that both from their consideration and from that of the court. While it is customary for a judge, in disposing of points of law in a cause that may have been raised before other judges at an earlier stage of the proceedings, to follow their decisions, he is not bound to do so. New pleadings intended to raise again a question of law which has been already presented on the record and determined adversely to the pleader are not to be favored. *Hillyer* v. *Winsted*, 77 Conn. 304. But a determination so made is not necessarily to be treated as an infallible guide to the court in dealing with all matters subsequently arising in the cause. If it be erroneous, and if the same point be presented in argument at a later stage of the proceedings, although before a different judge, he has the same right to reconsider the question, or to grant a rehearing on the issue closed on the prior pleadings, as if he had himself made the decision upon it. It is immaterial that the prior ruling was made at a previous term. While a final judgment cannot be reversed after the term during which it was rendered, except upon such new proceedings as may bring the cause again into life, an interlocutory one may be.

As the prior ruling on the demurrer was correct, no injustice would have been done by the charge in this respect, had the question to which it pertained been in all respects the same as that which came before the jury. But it was not the same. Evidence had been properly introduced upon the trial to show that the contract had been made with reference to the general customs and usages of those engaged in the kind of business conducted by the defendant. These usages formed a part of each contract. *Hatch* v. *Douglas*, 48 Conn. 116; *Skiff* v. *Stoddard*, 63 id. 198, 219. They might serve to explain the meaning of such terms as "P. full", and the acts to be done by each of the contracting

parties under certain conditions. These were matters which did not fully appear upon the face of the complaint. There may have been something in the evidence before the jury to lead to the conclusion that the contracts, though fair in external form, were in fact a cover for illegal practices. That such may have been the case is indicated by the instruction to which exception is taken. It would have been unnecessary to tell the jury that any question as to the validity of the contracts had been removed from their consideration, unless they could fairly have assumed that it was, except for that, one of the matters left for their determination.

There is error and a new trial is ordered.

In this opinion TORRANCE, C. J., HALL and PRENTICE, Js., concurred.

HAMERSLEY, J. I concur in the result, on the ground that the court erred in overruling the demurrer to the complaint.