MILO SHEFF ET AL. *v.* WILLIAM A. O'NEILL ET AL.

SUPERIOR COURT JUDICIAL DISTRICT OF FILE No. 360977
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed February 24, 1992

*Moller, Horton & Rice,* and *Martha Stone, John C. Brittain, N.B. Alisberg, P.D. Tegeler* and *Wilfred Rodriquez,* for the named plaintiff et al.

*Richard Blumenthal,* attorney general, and *Paul K. Pernerewski, John R. Whelan, Diane W. Whitney,* and *Bernard F. McGovern,* assistant attorneys general, for the named defendant et al.

HAMMER, J. The defendants have moved for summary judgment claiming that there is no dispute as to the material facts and that judgment should be entered as a matter of law in their favor because "the state has not engaged in conduct which violates the state constitution and because there is no judicial remedy available to the plaintiffs."

The three specific claims the defendants make in support of their motion are: (1) the plaintiffs' constitutional rights have not been violated because the conditions alleged in their complaint are not the products of state

action; (2) the plaintiffs' constitutional rights have not been violated because "the state has satisfied any affirmative obligation which arises out of the constitution"; and (3) the controversy is not justiciable.

This court, in its memorandum of decision dated May 18, 1990, on the defendants' motion to strike, considered the first of the foregoing claims in the context of that motion and ruled that, at least at that stage of the proceedings, the plaintiffs were entitled to a full hearing on the merits of their claims. The plaintiffs assert that the court should not reconsider that issue because the law of the case has been established by the court's prior decision.

"New pleadings intended again to raise a question of law which has been already presented on the record and determined adversely to the pleader are not to be favored." *Wiggin* v. *Federal Stock & Grain Co.*, 77 Conn. 507, 516, 59 A. 607 (1905). Where a matter has previously been ruled upon by a judge in the same case, he may treat that decision as the law of the case and should hesitate to change his own ruling if he is of the opinion that it "was correctly decided, in the absence of some new or overriding circumstance." *Breen* v. *Phelps,* 186 Conn. 86, 99, 439 A.2d 1066 (1982).

The principal factual basis for the defendants' claim that proof of some type of state action is an indispensable element of the plaintiffs' constitutional claims is an affidavit of Gerald L. Tirozzi, former commissioner of education for the state of Connecticut, in which he states that with the exception of regional school districts, "existing school district boundaries have not been materially changed over the last eighty or so years." Tirozzi also asserts that no child in this state, to his knowledge, has ever been assigned to a school district in this state on the basis of race, national origin, socio-economic status, or status as an "at risk"

student, and that children have always been assigned to particular school districts exclusively on the basis of their cities or towns of residence.

The plaintiffs argue that the requirement of "state action" is not a prerequisite for the establishment of their constitutional claims because they have alleged "de facto" rather than "de jure" racial and economic segregation. Their theory of the case is that they are seeking relief from "the harms that flow from the present condition of racial and economic segregation that in fact deprives Hartford area school children of their right to equality of educational opportunity [and that] the intent of the defendants is therefore immaterial."

Public schools are creatures of the state, and whether the condition whose constitutionality is being attacked "is state-created or state-assisted or merely state-perpetuated should be irrelevant" to the determination of the constitutional issue. *Keyes* v. *School District No. 1, Denver, Colorado,* 413 U.S. 189, 227, 93 S. Ct. 2686, 37 L. Ed. 2d 548 (1973). Educational authorities on the state and local level are so significantly involved in the control, maintenance and ongoing supervision of their school systems as to render existing school segregation "state action" under a state's constitutional equal protection clause. *Crawford* v. *Board of Education of the City of Los Angeles,* 17 Cal. 3d 280, 294, 551 P.2d 28, 130 Cal. Rptr. 724 (1976).

The defendants' claim that "direct and harmful state action is necessary to support claims under the education provision in Article VIII, § 1 of the state constitution" is based on the Supreme Court's recent decision in *Savage* v. *Aronson,* 214 Conn. 256, 571 A.2d 696 (1990), which upheld the constitutionality of the action of the commissioner of income maintenance in reducing the period of eligibility for emergency housing for families receiving Aid to Families with Dependent Chil-

dren (AFDC) from 180 to 100 days. One of the claims made by the plaintiffs in that case was that their children's constitutional rights to equal educational opportunity would be violated because of the harmful effect upon them of frequent school transfers. Id., 286.

The court's response to this argument was that the children's hardship was a result of the "difficult financial circumstances they face, not from anything the state has done to deprive them of the right to equal educational opportunity." Id., 287. Justice Glass, in his dissent, stated that the majority had apparently adopted the state's argument that it was not responsible for the consequences of poverty. Id., 288.

The United States Supreme Court has also stated in the public housing context that "the Constitution does not provide judicial remedies for every social and economic ill." *Lindsey* v. *Normet,* 405 U.S. 56, 74, 92 S. Ct. 862, 31 L. Ed. 2d 36 (1972). It has acknowledged, however, that although public education is not a right guaranteed by the constitution, it is nevertheless not merely some governmental "benefit" indistinguishable from other forms of social welfare legislation. *Plyler* v. *Doe,* 457 U.S. 202, 221–22, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982).

It is also important to recognize that the plaintiffs in the present case have raised an issue that was not decided in *Horton* v. *Meskill,* 172 Conn. 615, 376 A.2d 359 (1977), namely, whether the state's constitutional obligation under its education clause imposes "a requirement of a specific substantive level of education" in a particular area of the state. See *Abbott* v. *Burke,* 119 N.J. 287, 306, 575 A.2d 359 (1990). In order to rule on the plaintiffs' claims, therefore, the court must more particularly define "the scope and content of the constitutional provision[s]" upon which the plaintiffs rely. Id., 303.

For the foregoing reasons, as this court stated in its ruling on the defendants' motion to strike, the question of whether the state's action or failure to act rises to the level of a constitutional violation goes to the merits of the present case because it constitutes a "bona fide and substantial question or issue in dispute . . . which requires settlement between the parties" by way of the declaratory judgment that the plaintiffs seek. Practice Book § 390 (b).

The defendants' second claim in support of their motion is that "the state has satisfied any affirmative obligation which arises under the constitution." They point to the "undisputed fact" that the plaintiffs have been unable in the course of pretrial discovery to disclose "any distinct affirmative act, step or plan which, if implemented, would have sufficiently addressed the conditions about which the plaintiffs complain."

They also argue that despite the complexity of the problems reflected by the plaintiffs' inability to offer any alternative approaches that would pass constitutional muster, the General Assembly has adopted, and the defendants have implemented, a great number of programs "specifically designed to assist the Hartford public schools . . . in their effort to meet the special needs of urban children who are largely members of minority groups, often poor, and, in large numbers 'at risk.' " They have submitted a large amount of data furnished by the department of education describing the various state and interdistrict programs that have been developed to address these problems.

The materials furnished by the defendants tend to show that the objectives of these programs are being met and are having a positive effect on the problems that they were designed to address. The plaintiffs, on the other hand, have submitted counteraffidavits from Hartford area school administrators who state that, in

their opinion, the state's efforts have been ineffectual and that the fiscal and statistical data in the defendants' affidavits are inaccurate and misleading.

Although the defendants acknowledge that the constitution of Connecticut, article eighth, § 1, imposes an affirmative obligation on the state to provide free public elementary and secondary education and also makes education a fundamental right, they claim that that article cannot be construed either alone or in conjunction with the equality of rights clause (article first, § 1), and the equal protection clause (article first, § 20), to impose a specific obligation on the General Assembly to address the problems of which the plaintiffs complain in any way other than that body deems appropriate in its legislative judgment. The defendants' argument, in essence, is that what is "appropriate legislation" within the meaning of the education clause may be determined by the courts only where it involves the funding of the state's educational system, but they may not constitutionally impose a requirement of a specific substantive level of education.

The state's arguments in the present case are much the same as those made in *Abbott* v. *Burke,* supra, 299, to justify a ruling by the state commissioner of education that his department's funding and administration of the public school education act, which that court had found to be constitutional in prior cases, assured a "thorough and efficient education" as required by the state constitution. The court reversed the commissioner's ruling on the ground that "[t]he proofs compellingly demonstrate that the traditional and prevailing educational programs in these poorer urban schools were not designed to meet and are not sufficiently addressing the pervasive array of problems that inhibit the education of poorer urban children." Id., 295.

The New Jersey Supreme Court stated in *Abbott* that the constitutionally mandated educational opportunity

was not limited to "expenditures per pupil, equal or otherwise, but [was] a requirement of a specific substantive level of education." Id., 306. It is also noteworthy that the opinion refers to the failure of the so-called "effective schools" programs in both New Jersey and Connecticut to achieve their goals fully. Id., 377–78 n.38.

The defendants' restrictive views as to the permissible scope of judicial inquiry into the state's constitutional and statutory responsibilities in the field of public education bring to mind the views of Justice Loiselle, the lone dissenter in *Horton,* who took the position that the constitution requires only "legislation which makes education free." *Horton* v. *Meskill,* supra, 658. Nevertheless, Justice Loiselle acknowledged that a minimal substantive level of education may be constitutionally required in that "[a] town may not herd children in an open field to hear lectures by illiterates. But there is no contention that such situations exist, or that education in Connecticut is not meaningful or does not measure up to standards accepted by knowledgeable leaders in the field of education." Id., 659.

The plaintiffs in the present case have alleged that they have been deprived of a "minimally adequate education" and are therefore entitled to a judicial determination of whether the constitution requires a particular substantive level of education in the school districts in which they reside.

The defendants' final claim that the conditions of which the plaintiffs complain are not justiciable was thoroughly briefed and argued on the defendants' motion to strike, and the court's reasons for rejecting that claim are fully stated in the court's memorandum.

The court will treat that portion of its decision on the motion to strike as the law of the case because "it is of the opinion that the issue was correctly decided"

and the defendants' argument is repetitive. *Breen* v. *Phelps,* supra, 99. "Parties cannot be permitted to waste the time of courts by the repetition in new pleadings of claims which have been set up on the record and overruled at an earlier stage of the proceedings." *Hillyer* v. *Winsted,* 77 Conn. 304, 306, 53 A. 40 (1904).

For all of the foregoing reasons, the defendants' motion for summary judgment is denied.