[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff instituted this action in a four count CT Page 8041 complaint dated March 1, 1993. Defendants, the Town of Plainville, Brian N. Mullins and Edward Jedrzejczyk, police officers, moved to strike the complaint as it pertained to them. Their claim was that this complaint "is legally insufficient in that it fails to state a legal theory under which the Town of Plainville can be held liable for injuries allegedly caused by the negligence of its police officers." These defendants filed a Memorandum of Law in support of their motion to strike. The plaintiff filed a Motion In Opposition to the Motion to Strike (June 8, 1993). (Pleading #108).
After hearing on the Motion to Strike, the court (Berger, J.) granted the Motion to Strike in a written Memorandum dated May 19, 1994. (Pleading #136).
Thereafter, on June 3, 1944 the plaintiff filed a Substitute Complaint. (Pleading #137). The defendants, Town of Plainville, Brian J. Mullins and Edward Jedrzejczyk, on June 16, 1994, now moved to strike Plaintiff's Substitute Complaint. (Pleading #140).
In paragraph 16 of the original complaint the plaintiff had alleged:
 "Defendants Board and CIAC contracted with Defendant Town for said Town to provide two police officers for four hours each for the game."
In his Substitute Complaint plaintiff alleges:
 "Defendants Board and CIAC contracted with Defendant Town for said Town to provide two police officers for four hours each for the game for a fee based on the compensation paid to said officers."
The court's Memorandum of Decision (Berger, J.) striking the original Complaint fully dealt with the plaintiff's claim, in this regard, in pages 4, 5 and 6. Plaintiff claimed that the Town, in this case was performing a proprietary rather than a governmental function. The court disagreed and concluded that "neither the character of the municipal function nor the exemption from liability is changed by a small incidental revenue derived; Hannon v. Waterbury, 106 Conn. 13, 18 (1927), from the CT Page 8042 use of municipal police officers at an event held in the public interest." It does not appear to this court that Judge Berger expressed concern over this issue or needed fuller explanation or the like. The substituted language in paragraph 16 does not add any new substantive information not known to the court at the time its memorandum was prepared.
Paragraph 18 of the original complaint read:
 18. The participating and competing schools for the March 13, 1991 semi-final game were St. Thomas Aquinas High School from New Britain and Kennedy High School from Waterbury.
In the Substitute Complaint it is alleged:
 18. The participating and competing schools for the March 13, 1991 semi-final game were St. Thomas Aquinas High School from New Britain and Kennedy High School from Waterbury, which schools had played a hotly contested tournament game won by Aquinas the year before.
This court fails to see how the additional language "which schools had played a hotly contested tournament game won by Aquinas the year before" could really have impacted Judge Berger in a substantial way or increased his knowledge of the factual claims of the plaintiff or gained his insight of the color or character of the contest. The added language in this court's view, is surplusage.
Paragraph 28 of the original complaint read:
 28. Toward the end of the game one or more groups of spectators became disruptive, often spilling onto the playing floor.
In his Substituted Complaint the plaintiff alleged:
 28. Toward the end of the game, eventually won by Aquinas, approximately 30 Kennedy fans, whose race was not the same as that of most Aquinas fans, including minor CT Page 8043 Plaintiff, became disruptive, making threatening gestures and yelling threats to Aquinas fans in the direction where minor Plaintiff was sitting; some of that group of Kennedy fans often grabbed, pulled on uniforms of or pushed Aquinas players during play and spilled onto the playing floor; after the game, those Kennedy fans left the gym before minor Plaintiff did.
In this regard, it is claimed by the plaintiff that this new language details "the tension and the racial aspect of the situation at hand" and that "only the most obtuse persons would not have realized that substantial precautions were necessary to prevent a violent situation from erupting."
In the Memorandum of Decision of Judge Berger this concept and idea is fully explored, discussed and decided. Judge Berger wrote as follows:
 The plaintiff finally argues that if the acts of the officers were discretionary, "it should have been apparent to them that their failure to act would have been likely to subject the plaintiff to imminent harm."
 "The immunity from liability for the performance of discretionary acts by a municipal employee is subject to three exceptions or circumstances under which liability may attach even though the act was discretionary. . . ." Evon v. Andrews, 211 Conn. 501, 505 (1989). The first exception is relevant here: "where the circumstances make it apparent to the public officer that make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm." Id.
 Although not argued by the parties, this court takes note of the recent Supreme Court decision of Burns v. Board of Education, 228 Conn. 640 (1994). In Burns, the CT Page 8044 Supreme Court discussed the identifiable person/imminent harm exception to governmental immunity and clarified the type of plaintiff to whom this exception is intended to apply. The Supreme Court "construed this exception to apply not only to identifiable individuals but also to narrowly defined identified classes of foreseeable victims." Id., 646, citing Sestito v. Groton, 178 Conn. 520, 527-528 (1979). For purposes of the present motion, this court will assume that the basketball spectators were such a narrowly defined identified class of foreseeable victims and that the plaintiff fell within this class.[1]
 To fall within an exception to the doctrine of governmental immunity, however, more must be shown than that the plaintiff is one of a foreseeable class of victims. In the context of the present case, the plaintiff must also show that the circumstances made it apparent to the police officers that their failure to act would be likely to subject a person in this foreseeable class to imminent harm. See Shore v. Stonington, 187 Conn. 147 ("Under Sestito [v. Groton, supra] a police officer is liable whenever the circumstances indicate that someone will be severely injured." Id., 160 (Peters, C.J., dissenting)). The allegations only state that "one or more groups of spectators became disruptive . . ." toward the end of the game and that after the game, certain persons attacked leaving spectators outside the building and in the parking lots. When viewing the complaint in the light most favorable to the plaintiff, however, as is required for purposes of this motion to strike, there are no facts alleging any specific failure to act or that anyone at the basketball game was subject to imminent harm, much less that this set of circumstances was apparent to the police officers. Accordingly, there CT Page 8045 being no exception to the general rule providing for governmental immunity for discretionary acts applicable in the present case, the motion to strike the complaint to the extent it is directed against the police officers and the defendant Town is granted.
The Substitute Complaint alleges no conduct on the part of the defendants, which constitutes the recognized exceptions to the application of governmental immunity discussed in Judge Berger's Memorandum. Under the rule of governmental immunity for the negligent performance of discretionary acts, the Connecticut Supreme Court in Shore, supra, has established three exceptions to the public duty doctrine: (a) when "it would be apparent to the public officer that his failure to act would be likely to subject an identifiable person to imminent harm." Shore, at 153 et. sec.; (b) when a statute specifically provides a cause of action against an official or municipality for failure to enforce certain laws; see, e.g., Sestito v. Groton, 178 Conn. 520,523-24, 423 A.2d 165 (1979); (c) when the public officer has acted with malice, wantonness or intent to injure; see, e.g., Stiebitzv. Mahoney, 144 Conn. 443, 448-449, 134 A.2d 71 (1957). Evon, at 505.
In the present case, plaintiff's substituted complaint provides insufficient facts that the plaintiff was a foreseeable identifiable victim subject to imminent harm. The complaint fails to inform the defendants what it was specifically about the plaintiff at the time of the incident which would have made him identifiable as a victim of imminent harm.
Plaintiff's new factual allegations that he was an identifiable victim is based on plaintiff's allegation that gestures and threats were made "in the direction where the minor plaintiff was sitting."
Furthermore, these gestures and undefined threats were made in a crowded gymnasium, the site of a High School Basketball Tournament. There are no specific facts that would have placed the two defendant police officers on notice of plaintiff's status as an identifiable person.
Plaintiff's attempt to invoke his status as an identifiable person because of his location at the basketball game is insufficient as a matter of law. CT Page 8046
 "The adoption of a rule of liability where some kind of harm may happen to someone would cramp the exercise of official discretion beyond the limits desirable in our society. Should the officer try to avoid liability by removing from the road all persons who pose any potential hazard, he may find himself liable in many instances for false arrest. We do not think that the public interest is served by allowing a jury of laymen with the benefit of 20/20 hindsight to second-guess the exercise of a policeman's discretionary professional duty. Such discretion is no discretion at all."
Shore, at 157.
Not only has plaintiff failed to allege facts that he was an identifiable person, but he also fails to establish that he was subject to "imminent harm." The Connecticut Supreme Court addresses the "imminent harm" standard in Evon v. Andrews,211 Conn. 501 (1989). The court found that a municipality's failure to adequately enforce its fire, housing and health codes did not subject it to civil liability from the plaintiff whose decedent was killed in a house fire. The risk of such a fire did "not even rise to the level of imminence . . .", rejected in Shore v.Stonington, supra, in which a police officer permitted a drunk driver to continue on his way resulting in the death of plaintiff's decedent. Evon v. Andrews, at 508. In light of a definition of "imminence" which seems to require more than an event "which could have occurred at any time or not at all," Id., the allegations of plaintiff's Substitute Complaint at paragraph 28 do not meet the requirements of the identifiable person/imminent harm test.
The changed language in the Substitute Complaint does not change substantially the nature or character or claim made by plaintiff in the original Complaint,. There does not appear, to this court, that Judge Berger was unaware of or misunderstood the character of the event in the school auditorium where this incident occurred.
New pleadings intended to raise again a question of law which has been already presented on the record and determined adversely CT Page 8047 to the pleader are not to be favored, but a determination so made is not necessarily to be treated as an infallible guide to the court in dealing with all matters subsequently arising in the case. Breen v. Phelps, supra, 99, quoting Wiggin v. Federal Stock Grain Co., 77 Conn. 507, 516, 59 A. 607 (1905). Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstances. Miller v. Kirschner, 225 Conn. 185, 191,621 A.2d 1326 (1993); Breen v. Phelps, supra, 186 Conn. 99; see State v.Hoffler, 174 Conn. 452, 462-63, 389 A.2d 1257 (1978); see alsoState v. Mariano, 152 Conn. 85, 91, 203 A.2d 305 (1964), cert. denied, 380 U.S. 943 (1965). This court finds no new or overriding circumstance arising from the changed language in the Substitute Complaint. This court believes the prior granting of the Motion to Strike was correctly decided.
A judge should hesitate to change his own ruling in a case and should be even more reluctant to overrule a ruling of another judge. Breen v. Phelps, supra, 186 Conn. 99; see Ratner v.Willametz, 9 Conn. App. 565, 578, 520 A.2d 621 (1987).
 We observed in Breen that the law of the case doctrine is not one of unbending rigor when we said: "A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision."
Miller v. Kirschner, supra, 225 Conn. 191-92.
A trial court may apply its own judgment regarding an interlocutory ruling if the case comes before it regularly and it becomes convinced that the view of the law previously applied by a coordinate predecessor was clearly erroneous and would work a manifest injustice if followed. Carothers v. Cappozziello, supra,215 Conn. 107; see Breen v. Phelps, supra, 186 Conn. 100. This court cannot be convinced that the decision striking the original complaint was clearly erroneous.
For all of the foregoing, the defendants', Town of Plainville and Brian N. Mullins and Edward Jedrzejczyk, motion to strike CT Page 8048 plaintiff's substituted complaint, as it pertains to them is granted.
LEONARD W. DORSEY STATE TRIAL REFEREE