[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
CONSOLIDATED MEMORANDUM OF DECISION RE MOTIONS TO STRIKE (Nos. 258, 259, 260 261)
I. INTRODUCTION
These motions to strike arise in a tangled procedural context that exemplifies the potential for anarchy always lurking in our short calendar system. This action, which involves a 1986 sale of contaminated land, was filed in 1992. The legal documents filed with the court since then occupy nine folders, forming a stack at least a cubit in height. In spite of, or perhaps because of, this prodigious legal output, the pleadings are not yet closed. This confusion has caused much wasted judicial effort. More than two years ago, Judge Martin filed a well-reasoned fourteen page memorandum of decision striking a third-party complaint in this case. Through a twist of fate that could not have been predicted by Judge Martin (who is no longer assigned to this Judicial District), all his labors were in vain. Another judge subsequently allowed the first-party complaint to be amended (for the fourth time), and the amended first-party complaint completely altered the operative facts upon which Judge Martin's decision had rested. The amended first-party complaint was followed by an amended third-party complaint, not significantly CT Page 13643 different from that which Judge Martin struck, new motions to strike were filed, a year and a half went by while yet other judges considered yet other motions, and here we are. As Dickens said in Bleak House, never can there come fog too thick, never can there come mud and mire too deep, to assort with the groping and floundering condition which this court holds this day, in the sight of heaven and earth.
Nevertheless, fairness to the parties requires more than the simple wringing of judicial hands. The amendment of the first-party complaint has profoundly changed the legal landscape of the case, and Judge Martin's decision cannot be mechanically applied to the new facts at hand. The motions to strike now before the court will be considered on their merits, in as brief a compass as the complexity of the case allows.
II. PROCEDURAL HISTORY
The first-party plaintiffs, Russell and Katherine Hartt (the "Hartts"), allege that the defendant, Eli Schwartz ("Schwartz") sold them land that turned out to have been contaminated by hazardous waste. The hazardous waste in question is tetrachloroethylene (often referred to as "PERC"), a byproduct of the dry cleaning business. The Hartts' third amended complaint, filed on March 16, 1993, contained two counts directed at Schwartz. The first count alleged that Schwartz sold them the land in violation of the transfer act, Conn. Gen Stat. §§22a-134, et seq. The second count alleged fraudulent nondisclosure. In 1994, Schwartz filed a third-party complaint against four third-party defendants. Those third-party defendants are McGraw Edison Co. ("McGraw"), which allegedly had a franchise arrangement with a tenant of Schwartz's, who operated a dry cleanery on the land in question; H. Krevit Co. ("Krevit"), which allegedly delivered the PERC to the premises; and Dow Chemical Co. ("Dow") and Pittsburgh Plate Glass Co. ("Pittsburgh"), which allegedly manufactured the PERC. Schwartz's amended third-party complaint, filed on August 1, 1994, contained three counts directed against each of the third-party defendants. These counts alleged active-passive negligence, product liability, and a violation of Conn. Gen. Stat. §22a-452.
On October 20, 1995, Judge Martin struck the amended third-party complaint in its entirety.* Although his opinion is a thorough one, his reasoning can be briefly explained. A CT Page 13644 third-party defendant can only be liable to a third-party plaintiff for losses sustained by the third-party plaintiff as a result of the first-party plaintiff's claim. The Hartts' complaint was not that Schwartz had sold them contaminated land, but that he had sold them contaminated land without disclosing the fact that it was contaminated. If the third-party defendants were liable for anything, it was contamination of the land. They could not be liable for Schwartz's nondisclosure.
Judge Martin's decision was, as mentioned, filed on October 20, 1995. On November 13, 1995, another judge allowed the Hartts to file a fourth amended first-party complaint. The new first-party complaint keeps the original two counts against Schwartz and adds three more: negligence, a violation of Conn. Gen. Stat. § 22a-452, and a violation of Conn. Gen. Stat. § 22a-16. (A fourth new count was added as well, but that has since been stricken.) The new counts, unlike the old, squarely allege that Schwartz is liable for the contamination of the land as well as nondisclosure at the time of sale. For obvious reasons, this amendment was of profound importance to Schwartz and the third-party defendants.
On December 27, 1995, Schwartz filed a second amended third-party complaint. This third-party complaint, like its predecessor, directs allegations of active-passive negligence, product liability, and violation of § 22a-452 against each of the four third-party defendants. On various dates in March 1996, the third-party defendants filed motions to strike. These motions raise questions concerning the law of the case as well as each of the substantive causes of action alleged in the third-party complaint. The motions were heard on November 18, 1997. The issues they raise are considered below.
III. LAW OF THE CASE
Given the procedural history described above, the third-party defendants' law of the case argument cannot prevail. "New pleadings intended to raise again a question of law which has been already presented on the record and determined adversely to the pleader are not to be favored . . . . But a determination so made is not necessarily to be treated as an infallible guide to the court in dealing with all matters subsequently arising in the cause." Wiggin v. Federal Stock Grain Co., 77 Conn. 507, 516,59 A. 607 (1905). It is well settled that a trial court judge may disagree with a decision of a predecessor judge that the new CT Page 13645 judge views as clearly erroneous. Breen v. Phelps, 186 Conn. 86,100, A.2d (1982). That, however, is not the problem here. In this case, the situation has changed so markedly that Judge Martin's decision is not so much erroneous as simply inapplicable. That decision was grounded on the well-reasoned theory that the contamination of the land in question and the subsequent nondisclosure of the contamination were two entirely different transactions. There is nothing erroneous in this reasoning. Its continuing validity, however, is of limited present assistance to the third-party defendants, given the fact that the Hartts now claim both nondisclosure and contamination in their amended first-party complaint.
Because of the change in circumstances, the law of the case doctrine cannot mechanically be used to strike Schwartz's amended third-party complaint. It should be noted, however, that the reasoning of Judge Martin's decision, if not the decision itself, may have some continuing force at the time of verdict. To the extent that the Hartts recover against Schwartz on either of the first two counts of their amended first-party complaint — i.e. the claims of nondisclosure — Schwartz may be unable to recover against the third-party defendants. To the extent, however, that the Hartts recover against Schwartz on the third through fifth counts of their amended third-party complaint — i.e. the claims of contamination — Judge Martin's reasoning simply does not apply. This matter may safely be left to the trial judge.
IV. ACTIVE-PASSIVE NEGLIGENCE
Schwartz's amended third-party complaint directs a count of active-passive negligence against each of the third-party defendants. Each of those parties attacks the count of active-passive negligence directed against it. Two somewhat different issues are raised by these attacks. First, Schwartz alleges that each third-party defendant was in exclusive control of the situation. The third-party defendants collectively argue that, while it is possible that any one of them might have been in exclusive control of the situation, it is not possible that more than one of them had such exclusive control. Beyond this collective argument, each of the third-party defendants claims that the active-passive negligence count against it fails to set forth sufficient facts concerning exclusive control to state a claim upon which relief can be granted. These arguments will be considered in turn. CT Page 13646
The third-party defendants' collective argument must fail because the question that must be addressed when a party moves to strike a count of a complaint is whether that individual count states a legally sufficient allegation. Hoboken Wood FlooringCorp. v. Torrington Supply Co., 42 Conn. Sup. 153, 157,606 A.2d 1006 (1991). Beyond this, however, the third-party defendants misapprehend the precise meaning of the term "exclusive control" in our jurisprudence. First, the requisite "exclusive control" is control to the exclusion of the third-party plaintiff, not necessarily control to the exclusion of other third-party defendants. Kaplan v. Merberg Wrecking Corp., 152 Conn. 405, 416,207 A.2d 732 (1965). Second, the "exclusive control" required by our case law is not exclusive control of the premises but exclusive control of "the situation." Skuzinski v. BouchardFuels, Inc., 240 Conn. 694, 706, 694 A.2d 788 (1997). The respective third-party allegations now before the court can fairly be read to refer to different "situations." In the case of McGraw, the situation alleged by the third-party complaint is the selection, installation, and operation of the dry cleaning equipment. In the case of Krevit, the situation is the delivery of PERC to the premises. In the case of the two manufacturers, the situation is the presence or absence of instructions and warning on their dry cleaning products. Under these circumstances, the allegations that each third-party defendant had exclusive control of its respective situation are not inherently contradictory.
As to the sufficiency of Schwartz's individual allegations, "[w]hether or not one is in control of a situation is ordinarily a question of fact." Kaplan v. Merberg Wrecking Corp., supra,152 Conn. at 418. Although there are "rare examples in which the issue may properly be decided as a question of law," Skuzinski v.Bouchard Fuels, Inc., supra, 240 Conn. at 705, this case is not one of them. At this stage, the alleged facts must be construed in the light most favorable to the third-party plaintiff. The question is whether, if these facts were proven, a reasonable juror could find that Schwartz had met his burden of establishing that the third-party defendants were in exclusive control of their respective situations. Id. Under the circumstances alleged here, the answer to this question is in the affirmative. The active-passive negligence counts consequently state a claim of exclusive control upon which relief can be granted.
V. PRODUCT LIABILITY CT Page 13647
The third-party defendants' motions to strike Schwartz's product liability claims against them are collectively grounded in Conn. Gen. Stat. § 52-572(c) (the "commercial loss statute"). The commercial loss statute provides that, "As between commercial parties, commercial loss caused by a product is not harm and may not be recovered by a commercial claimant in a product liability claim. An action for commercial loss caused by a product may be brought only under, and shall be governed by, title 42a, the Uniform Commercial Code."
The third-party defendants argue that both they and Schwartz are "commercial parties" and that whatever loss Schwartz suffers as a result of the Hartts' first-party action is a "commercial loss" within the meaning of the commercial loss statute. At first blush, their argument is a forceful one. Schwartz was a landlord, and both he and the third-party defendants were engaged in business transactions when the events in question occurred. Thus, at least in a colloquial sense, they were "commercial parties." Moreover, the only published judicial decision interpreting the commercial loss statute construes its ambit rather broadly to cover business entities with a landlord-tenant relationship, noting that the statute "excludes recovery for certain losses as between commercial parties, not contracting parties." ConnecticutGeneral Life Ins. Co. v. Grodsky Service, Inc., 781 F. Sup. 897,901 (D.Conn. 1991). (Emphasis in original.) Forceful though they are, however, these considerations are outweighed by two other factors: the text of the commercial loss statute and its legislative history. These factors will be considered in turn.
The commercial loss statute does not define the term "commercial." An important clue to its meaning can, however, be found in the second sentence of the statute. That sentence provides that, "An action for commercial loss caused by a product may be brought only under, and shall be governed by, title 42a, the Uniform Commercial Code." The commercial loss statute thus envisions two categories of cases: product liability cases governed by the product liability act and commercial cases governed by the UCC. This dichotomy is underlined by the UCC's own express statement of purpose. The underlying purpose of the UCC is "to simplify, clarify and modernize the law governing commercial transactions." Conn. Gen. Stat. § 42a-1-102(2)(a). It is thus reasonable to decipher the meaning of the term "commercial" by looking to the UCC.
While the UCC does not define the term "commercial," the CT Page 13648 types of relationships with which it deals are expressly set forth in its provisions. The most pertinent of these is Article 2, dealing with sales. Article 2, which contains the warranty provisions of the UCC, "applies to transactions in goods." Conn. Gen. Stat. § 42a-2-102. It is these transactions, the buying and selling of goods, to which the commercial loss statute manifestly applies. When goods are bought and sold, the buyers must look to the warranty provisions of the UCC for relief. When a product causes damage to someone who hasn't purchased it, the product liability act is the governing body of law.
This analysis is strongly reinforced by the legislative history of the commercial loss statute. The statute was enacted in 1984, as an amendment to the product liability act. 1984 Conn. Acts No. 84-509. In introducing the bill to the Senate, its sponsor stated that, "This Bill would specify that a contract is enforceable even though it prevents recovery from loss or damage as long as the contract is between commercial parties and effects [sic] only those who are actual parties to the contract." 1984 S.Proc. 1371-72 (remarks of Sen. Owens). This history, combined with the statutory text, is persuasive evidence that the commercial loss statute applies only to commercial contract cases governed by the UCC. As the sponsor of the bill in the House explained, "it makes the recoverability of commercial loss a question that is governed by commercial law and not products liability law." 1984 H.Proc. 4047 (remarks of Rep. Wenc).
Schwartz did not have either a contractual or buyer-seller relationship with any of the third-party defendants. This situation is governed by the product liability act, not the UCC. Schwartz's cause of action is, consequently, not precluded by the commercial loss statute. The motions to strike based on that statute must fail.
VI. CONN. GEN. STAT. § 22a-452
Although Schwartz has directed counts based upon Conn. Gen. Stat. § 22a-452 against each of the third-party defendants, only Krevit has directly attacked this claim on the merits. For the reasons briefly set forth below, Krevit's argument on this point is a persuasive one.
Conn. Gen. Stat. § 22a-452(a) provides, in relevant part, that, "[a]ny person . . . which contains or removes or otherwise mitigates the effects of . . . hazardous wastes resulting from CT Page 13649 any discharge . . . of such . . . waste shall be entitled to reimbursement from any person . . . for the reasonable costs expended for such containment, removal, or mitigation, if such . . . wastes . . . resulted from the negligence or other actions of such person." The sixth count of Schwartz's third-party complain, directed against Krevit, alleges that, "If plaintiffs, Hartts, prove the claims set forth in their Fourth Amended Complaint, then defendant third-party plaintiff Schwartz is entitled to reimbursement from the third-party defendant, Krevit, pursuant to Section 22a-452 of the Connecticut General Statutes."
Schwartz has not alleged that he has taken any action to remediate the alleged contamination of the property or that he has expended funds for such remediation. He has, consequently, failed to state a cause of action under § 22a-452. SeeAlbahary v. City Town of Bristol, Connecticut, 963 F. Sup. 150,156 (D.Conn. 1997), and authorities cited therein.
VII. CONCLUSION
For the reasons set forth above, the motions to strike are granted as to the sixth count of the amended third-party complaint and are otherwise denied.
Jon C. Blue Judge of the Superior Court