[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These two cases involve issues of the constitutionality of an amendment to the Stamford Zoning Regulations and the validity of a related site plan approval. The first, D.N. CV95 0143334, is in the nature of a declaratory judgment (the "Declaratory Judgment" action) seeking a ruling that an amendment to the Stamford Zoning Regulations enacted by the defendant zoning board is invalid because it is unconstitutionally vague and without appropriate standards. The second, D.N. CV95 0143335, is an appeal ("Site Plan Appeal") from the said defendant's approval of a certain site plan application. The two cases were consolidated for trial and heard together by the court.
In addition to the Stamford Zoning Board, other defendants are IMRS, Inc., and Richard W. Redness, the applicants in both the zoning amendment and site plan applications. The plaintiffs are the owners of property which abuts the property affected by both applications and they are found to be statutorily aggrieved. CT Page 5578-BB
The defendant IMRS, Inc., is the owner of more than 38 contiguous acres of commercially zoned land on the west side of Long Ridge Road in Stamford. The defendant Richard W. Redness is a land planning consultant who joined with IMRS in the applications to the defendant Zoning Board. The plaintiffs own residential property (their own residence) abutting the IMRS property on the west.[1]
The subject of these cases is a two story office building on the defendants' property to which the defendants desired to add an additional two stories. Existing zoning regulations permit three and one-half stories in this C-D Designed Commercial District.[2]
The defendants submitted an application to the Board for an amendment to Section 9, B-5(d) of the Regulations.[3] The defendants also submitted an application for site plan approval, pursuant to Section 7.2 of the regulations, for the two additional floors. The two applications were heard together on the evening of January 4, 1995. On the same evening the Board enacted the zoning amendment[4] and granted the site plan application pursuant to the new regulation.
In the Declaratory Judgment action, the plaintiffs allege that in approving the application the board acted illegally, arbitrarily and in abuse of the discretion vested in it, in that the amendment is unconstitutional and otherwise invalid. The plaintiff also contends that the Board abused its discretion in approving the site plan application because (a) the plan was approved prior to the effective date of the new regulation, and (b) there was insufficient evidence of appropriate screening as required by the amendment.
THE DECLARATORY JUDGMENT
On its 38 acre site on Long Ridge Road the defendants are entitled to build, under applicable C-D Designed Commercial District regulations a three and one-half story building. Because they wanted to add two floors to their existing two story building, the defendants filed an application which would permit a four story building on this property. The Board, after public hearing at which the plaintiffs were heard in opposition, approved the application with a slight change in language (see footnote 4). The amendment permits a building to be built in the district to a height of four stories, provided the structures are set back at least four hundred feet from the road, "areCT Page 5578-CCappropriately screened from adjacent residentially zoned land bylandscaped treatment and topography, as determined by the zoningboard", shall not result in a floor area ratio (FAR) exceeding 0.4, and the area of the roof covered by mechanical equipment or penthouses shall not exceed 10 percent.
It was established at the hearing that the property of the defendants slopes upward from Long Ridge Road to a sharp precipice at its westerly boundary which abuts the property of the plaintiffs; that the defendants' building is a 160 feet from the western property line; that the plaintiff's house is approximately 570 feet from the defendants' building; that the ground floor of the plaintiff's residence is at an elevation of 246 feet and the top of the defendant's proposed addition is at an elevation of 232 feet at its highest point; that the approval requires the defendants to plant some 85 six foot trees as "in-fill" to existing 20 foot trees; that because of the difference in elevation said conifer trees will appear from the plaintiffs' residence to be of greater height; that the building would contain glass walls on its westerly side (facing the plaintiffs); that the "footprint" of the building would remain virtually the same; that because of the topography the building would be four stories to the east but only three stories to the west facing the plaintiffs; and that all other requirements of the regulations are met.
The plaintiffs find fault with the amended regulation in the use of the word "appropriate screening", contending that the board has enacted an ordinance which is impermissibly vague because it does not allow one to know what standards the board will use in applying that requirement and thus does not sufficiently apprise anyone (a developer or the general public) of how land can be used. Plaintiffs claim this to be a defect which violates principles of due process because it "substitutespure discretion for the type of discretion that should have been controlled by a fixed constitutional standard."
It is important to note that this court (Lewis, J.) has in this very case held, in denying a temporary injunction to the plaintiffs, that the amendment is constitutional.[5] Therefore, the initial inquiry is whether this decision constitutes the law of the case by which the court should now be bound.
"The law of the case . . . is a flexible principle of many facets adaptable to the exigencies of the different situations in CT Page 5578-DD which it may be invoked . . . In essence, it expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation of their power . . . A judge should hesitate to change his own rulings in a case and should be even more reluctant to overrule those of another judge . . . Nevertheless, if the case comes before him regularly and he becomes convinced that the view of the law previously applied . . . was clearly erroneous and would work a manifest injustice if followed, he may apply his own judgment." State v.Arena, 235 Conn. 67, 80, ___ A.2d ___ (1995). "[W]here a matter has been previously decided in an interlocutory ruling, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if he is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. Breen v. Phelps, 186 Conn. 86, 99, 439 A.2d 1066
(1982); State v. Hoffler, 174 Conn. 452, 462-63, 389 A.2d 1257
(1978). There is no question that Judge Lewis' decision was an interlocutory order. ". . . [A]n order granting or denying a temporary injunction is considered interlocutory and therefore is not an appealable final judgment." Southington v. Pierce,29 Conn. App. 716, 720, 617 A.2d 929 (1992); Ebenstein Ebenstein,P.C. v. Smith Thibauld Corporation., 20 Conn. App. 23, 25,563 A.2d 1044 (1989). Of course, "[A]ccording to the generally accepted view, one judge may, in a proper case, vacate, modify or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law." Breen v. Phelps, supra,186 Conn. 98-99. The court agrees with Judge Lewis' determination that the contested amendment is, for the reasons set forth therein, constitutional, and thus declares it to be the law of the case. Nevertheless, the court is moved to expound further on the reason for this ruling.
The plaintiffs have made a facial attack upon the validity of the amendment in question. "Whether specific regulations meet the test of a constitutional exercise of the police power must be determined in the light of the circumstances shown to exist in a particular case". Helbig vc. Zoning Commission, 185 Conn. 294,304-305, 440 A.2d 940 (1981); Teuscher v. Zoning Board ofAppeals, 154 Conn. App. 650, 659, 228 A.2d 518 (1967). When a question of constitutionality is raised, the court presumes the validity and sustains the legislation unless it clearly violates constitutional principles. Teuscher v. Zoning Board of Appeals,
id, 659. The plaintiff has the burden of overcoming this presumption and the burden is not a light one. Helbig v. ZoningCommission, supra, 305; and the invalidity of the legislation on CT Page 5578-EE constitutional grounds must be established beyond a reasonable doubt. Adams v. Rubinow, 157 Conn. 150, 152, 251 A.2d 49 (1968).
The principle that a statute should be construed so as to give effect to the legislative intent, while keeping in view the object of the statute, is applicable to a zoning ordinance. See,Stephen Reney Memorial Fund v. Old Saybrook, 4 Conn. App. 111,113, 492 A.2d 533 (1985). The object of zoning, primarily, is to promote the health, safety, welfare and prosperity of the community. The obvious intent of the suspect language of the amendment, that structures ". . . are appropriately screened from adjacent residentially zoned land by landscaped treatment and topography, as determined by the zoning board" is to protect, as best as possible, residentially zoned properties from the buildings and the activities in abutting commercial zones. "When the statute will serve to further the welfare of the citizens of the state, we must make every intendment in its favor". Legat v.Adorno, 138 Conn. 134, 145, 83 A.2d 185 (1951). Although an ordinance must state its standards with adequate clarity, lack of precision is not, in or of itself, offensive to the requirement of due process. See, State v. Anonymous, 179 Conn. 155, 164,425 A.2d 939 (1979). Indeed, the Stamford Zoning Regulations, Section 7.2 Site Plan Review, sets forth detailed standards to be met in approving a site plan, most of which by necessity call for the zoning board to exercise its discretion. The plaintiffs, being adjacent residential owners, are the precise persons the screening and other limitations of the new amendment were designed to protect. By the provisions of the regulation, fair warning it is also conveyed that the Board will seek to impose screening requirements before an application is granted. A developer is alerted that he had best present a reasonable screening plan, and a neighbor is made aware that he may be heard at public hearing on the appropriateness of such a plan. All are aware that the Board is required to insist on appropriate screening ". . . by landscaped treatment and topography, as determined by the Zoning Board. . . ." Precisely what the "landscaped treatment" must be is to be determined by the physical circumstances of each case. Whether screening should be by fences, bushes, stone walls, sound barriers or otherwise cannot be forecast in advance. If one were to attempt to fashion a regulation which seeks to set forth the standards for screening all properties under all circumstances, this court finds, as did Judge Lewis, the task "would be well-nigh impossible".
The plaintiffs have not, in challenging the constitutionality CT Page 5578-FF of the amendment, sustained their burden of proving that the effect of the challenged ordinance adversely affects a constitutionality protected right they have. This means a right which they have proven they have under the facts of their particular case and not merely under some possible or hypothetical set of facts not proven to exist. Adams v. Rubinow,
supra, 157, 152-153.[6]
The court finds that the plaintiffs have not proved beyond a reasonable doubt that the contested amendment to Section 9, B-5(d) of the zoning regulations is invalid for vagueness and unconstitutional.
SITE PLAN APPEAL
The plaintiffs' first attack on the validity of the Site Plan is that it was illegally heard and approved prior to the effective date of the amendment pursuant to which it was sought. The effective date of the amendment was January 19, 1995. However, the effective date of the site plan approved was also January 19, 1995, thus rendering the plaintiffs' argument untenable. In addition, the plaintiffs cite to no authority for the proposition that the approval of the site plan was flawed because the site plan application was heard prior to the effective date of the amendment. It is a common practice in this state for zoning agencies to hear requests for zoning changes and site plan approvals or special exception permits together, and to act upon them simultaneously. See, Tondro Connecticut Land UseRegulation (2 Ed.), 191, 192.
The plaintiffs next claim that the Board abused its discretion in approving the site plan application because there was insufficient evidence that the screening proposed and approved was "appropriate". Acting in an administrative capacity in addressing the defendants' site plan application the Board was required to approve it only upon substantial evidence. It has been said that the substantial evidence rule requires enough evidence "to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury". Kauffman v. Zoning Commission,232 Conn. 122, 151, ___ A.2d ___ (1995). The substantial evidence rule ". . . imposes an important limitation on the power of the court to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly CT Page 5578-GG erroneous actions . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . ". (Citations omitted; internal quotations marks omitted) Dolgner v. Alander, 237 Conn. 272, 281, ___ A.2d ___ (1996).
The court finds in this case that the Board had before it substantial evidence to justify the granting of the site plan application. IMRS, the owner of 38 acre situated on Long Ridge Road, in a C-D Designed Commercial District, filed a site plan application to permit it to add to its existing two story office building to a height of four stories, pursuant to the provisions of the Stamford Zoning Regulations Section 7.2 (Site Plan Review) and Section 9, B-5(d) (as amended). The plaintiffs own the residential property (their residence) which abuts IMRS's property to the west. The property of IMRS slopes upward from Long Ridge Road to a precipice at its westerly boundary; the commercial building on the IMRS property is 160 feet from its own westerly property line, and approximately 570 feet from the plaintiffs' house. The ground floor of the plaintiff's residence is at an elevation of 246 feet and the top of the defendant's proposed addition will be at an elevation of 232 feet at its highest point. The building coverage is 5.3%, being less than the allowable 12%, and impervious coverage is lower than the permitted 40%, being 23.6%. The "footprint" of the building will remain virtually the same. Because of the topography of the land, the building would be four stories to the east, but only three stories to the west. All other requirements of the regulations are met. The Board heard extensive testimony and had for its review a submission showing existing conditions, a traffic report, architectural plans and elevations, a site plan with lighting, a sediment and erosion control plan with landscaping, and a cross section of the building and the westerly property line.
The west side of the building would contain glass walls, which the plaintiffs characterized as "a wall of glass". In point in fact, according to evidence presented, a precast concrete panel system will be used on the west side of the building, with strips or panels of glass with a dark bronze tint. The glass is not of a "reflective" variety, but it is smoked glass through CT Page 5578-HH which 45% of the interior light is not filtered. IMRS further proposes to use a film coating on the glass.[7] The applicants proposed, and the Board approved, a plan requiring the owner to plant some 85 six foot trees as "in-fill" to existing 20 foot trees. Because of the difference in elevation between the two properties, the conifer trees will appear from the plaintiffs' residence to be of greater height.
From the above evidence, the Board determined that the applicants' property was "appropriately screened from adjacent residentially zoned land by landscaped treatment and topography". The regulation does not compel the Board to require screening from the plaintiffs' boundary line, or any other specific point on the plaintiff's land. Rather, the Board is charged with a duty to screen the commercial use from the residential property "appropriately". Just what needs to be screened is to be determined by the Board according to the circumstances of each case. For example, a dwelling house may not need to be screened, while other areas of the property such as a recreational area (e.g., a swimming pool), in the exercise of discretion, might well demand screening from the commercial property.
In this case, the plaintiffs have erroneously taken the phrase "appropriate screening" to mean that the commercial property must be rendered invisible to the plaintiffs. Indeed, the defendants argued before the Board that the extensive screening and the topography would result in the defendants' building being virtually blocked from view from the plaintiffs' residence. However, the regulation does not suggest, nor was the Board required to find that the defendants' building would be "invisible" from the plaintiffs' house. The Board need only have found that the landscaping and topography was adequate to screen appropriately the defendants' property from that of the plaintiffs. The court finds that the Board's conclusion was based upon substantial evidence and upon an honest judgment reasonably and fairly exercised; that upon the record its conclusions were reasonably and logically reached and with proper motives and valid reasons.
Finally, the plaintiffs claim that the Board abused its discretion in approving the application because it reserved to a future date the determination of appropriate screening from other residential property (the Sclafani property). The plaintiffs here have no standing to raise the issue of appropriate screening of another's property, at least in this case where appropriate CT Page 5578-II screening could not immediately be determined because the subject land was vacant. In fact, the affected neighbor has withdrawn its objection, and the screening plan has since been submitted and is satisfactory to the neighbor and to the Board.
Other allegations contained in the complaints of the plaintiffs in these cases are not addressed herein because they were not argued or briefed and are deemed abandoned.
The appeals in the Declaratory Judgment action and the Site Plan Appeal are dismissed.
So Ordered.
Dated at Stamford, Connecticut, this 4th day of September, 1996.
D'ANDREA, J.